360 So.2d 239 (1978)
Donald Ricky NORTON and Sharon C. Norton
v.
Barney Dean LAY et al.
No. 12050.
Court of Appeal of Louisiana, First Circuit.
June 12, 1978.
*240 Thomas H. Matuschka, Baton Rouge, of counsel for plaintiffs-appellees, Donald Ricky Norton and Sharon C. Norton.
Charles S. McCowan, Jr., Baton Rouge, of counsel for defendant-appellant, Barney Dean Lay et al.
Before LOTTINGER, EDWARDS and PONDER, JJ.
LOTTINGER, Judge.
This suit was consolidated for purposes of trial and appeal with City of Baton Rouge v. Lay et al., Number 12051 on the docket of this Court, 360 So.2d 243. Both suits will be discussed in this opinion, however, separate judgments shall be rendered.
These consolidated suits seek injunctive relief for the alleged violations of subdivision restrictions and municipal zoning ordinances respectively. From judgments granting preliminary and permanent injunctions, defendants have appealed.
In suit number 12050, Donald and Sharon Norton, property owners in College Town Subdivision, sue Barney Dean Lay, Jr., owner of Lot 3, Square 8, College Town Subdivision, Bruce Foreman, and Interior Reflections, Inc. for violating the restrictions of College Town Subdivision by conducting a business on Lot 3, Square 8, College Town Subdivision. The City of Baton Rouge in suit number 12051 sues Lay and Foreman for operating the business known as Interior Reflections, Inc. consisting of retail sales, on the above described property, in violation of the city's zoning ordinances.
As to the Norton Suit, defendants-appellants stipulated that there was a violation of the "indirect business activity" prohibition in the restriction; however, they pleaded that there was an unauthorized use of summary process and, in the alternative, that any violation had prescribed by virtue of LSA-R.S. 9:5622. As concerns the city suit, defendants-appellants filed an exception of unauthorized use of summary process, and took the position that there was no violation of the zoning ordinance because of the "home occupation" exception contained therein. In the alternative, they pleaded prescription by virtue of LSA-R.S. 9:5625. Petition was filed by the Nortons on October 20, 1977, and by the City on October 28, 1977. Based on stipulations that the testimony on the exceptions would be applicable to the merits, both preliminary and permanent injunctions were granted.
The issues in this case are the use of summary process and the time at which liberative prescription begins to run against the violation of a subdivision restriction and/or a municipal zoning ordinance.

SUMMARY PROCESS
It is argued by the defendants that summary process can only be resorted to in those cases expressly authorized by law, and that no law is cited which permits the use of summary process to prevent the use of privately owned property before a thorough trial on the merits.
*241 LSA-C.C.P. art. 3601 allows the issuance of an injunction in cases where irreparable injury, loss, or damage may otherwise result to the applicant, and that during the pendency of the action for the injunction, the court may issue a temporary restraining order, a preliminary injunction, or both. LSA-C.C.P. art. 3602 provides that a preliminary injunction shall not issue unless notice is given and an opportunity had for a hearing. The preliminary injunction hearing shall be assigned for not less than 2 nor more than 10 days after service of the notice. The jurisprudence is legion with cases that recognize injunctive proceedings as a proper vehicle to prevent violations of subdivision restrictions. We view the defendants' exception of unauthorized use of summary process to be directed to the hearing conducted for the purpose of determining whether a preliminary injunction should be issued. We are of the opinion that LSA-C.C.P. arts. 3601 and 3602 contemplate the use of summary process for the issuance of a preliminary injunction.
Additionally, a preliminary injunction can be classified as an incidental question arising in the course of litigation seeking a permanent injunction, and thus, summary process would be expressly authorized under LSA-C.C.P. art. 2592(1). Therefore, we find no error on the part of the trial judge in denying the exception of unauthorized use of summary process.

PRESCRIPTION

Subdivision Restrictions.
LSA-R.S. 9:5622A in part provides that "actions to enjoin or to obtain damages for the commission or continuance of a violation of restrictions contained in the title to land are prescribed by two years, reckoning from the commission of the violation".
The Louisiana Legislature in the 1977 Regular Session adopted Act 170 which revised Book II of the Louisiana Civil Code by repealing Title V, fixing limits and surveying lands, containing Articles 823 through 855, and substituting therefor a new Title V, building restrictions, containing Articles 775 through 783. This Act was effective on January 1, 1978. Article 781 thereof provides:
"No action for injunction or for damages, on account of the violation of a building restriction may be brought after two years from the commencement of a noticeable violation. After the lapse of this period, the immovable on which the violation occurred is freed of the restriction that has been violated."
Comment (a) to this Article states that it does not change the law.
In promulgating this article, the legislature has codified the prior applicable standards for determining the date upon which prescription for a violation of a subdivision restriction commences to run. Therefore, we interpret LSA-R.S. 9:5622A, the prior law applicable to this case, to mean that prescription begins to run from the date of a noticeable violation of the restriction, and not from the commencement of a secretive or surreptitious violation. Thus, we proceed to determine if a noticeable violation occurred more than two years prior to the filing of the Norton's suit.
Barney Dean Lay, Jr. purchased Lot 3, Square 8, College Town Subdivision on July 6, 1972. In October of 1974, Bruce Foreman, a roommate of Barney Lay, started an interior decorating business known as Interior Reflections, Inc., and has continued in business since that time. The occupational license for Interior Reflections, Inc. listed the business address as 1284 Perkins Road, and the business telephone listing was other than the Amherst address.
The residence located on subject property at municipal number 302 Amherst is a tastefully decorated one story dwelling that does not give any outward appearance of being anything other than a residence. When the property was purchased in 1972, it was advertised as containing an office, and when Interior Reflections, Inc. began its operations, Bruce Foreman used the office on the premises as well as an office on Perkins Road. In October of 1975, Barney Lay became a shareholder in Interior Reflections, Inc. and began working with Foreman in November of that year.
*242 The defendants argue that their business activities were not conducted secretively, but that they did not list the Amherst address in the telephone book because they did not want walk-in customers. Visits and consultations with clients were conducted by appointment only, and were generally held in the client's home or place of business. The only merchandise kept on the premises was carpet and fabric samples which were not for sale, but were used only for reference. Clients of the defendants would visit the Amherst address to review samples from which selections were made.
The defendants' witnesses testified that they knew of the business activity being conducted at 302 Amherst; however, in reviewing their testimony, we conclude that those who were residents of the subdivision had either worked for the defendants, or were their clients.
Conversely, the plaintiffs along with several residents of the subdivision testified that they had no knowledge of the business until after a December 7, 1975 newspaper article concerning the operations of Interior Reflections, Inc. and giving 302 Amherst as its business address. These residents include members of the board of the Civic Association, as well as next door neighbors.
Further, the city employees also testified that upon inspections they could not see any violations of the city zoning ordinances.
We are convinced that there was no error on the part of the trial judge in concluding that a noticeable violation of the subdivision restrictions had not occurred more than two years prior to the date that suit was filed. Based on the defendants' admission of violation of the subdivision restrictions and the overruling of their exception of prescription, the award of the preliminary and permanent injunction is justified.

Zoning Ordinance.
The defendants do not admit any violation of the city zoning ordinances, but alternatively if there is any, they then plead prescription.
The subject property is zoned A-1, single family dwelling. In an A-1 zone, a home occupation accessory use is permitted. Baton Rouge City Code 7:7.104 provides:
"A home occupation is an accessory use; it is an activity carried on only by a resident member of a family meeting the following conditions:
(a) Only one nonilluminated sign no larger than one square foot in area shall be used:
(b) Nothing shall be done to make the building appear in any way as anything but a dwelling;
(c) No business such as a shop or store shall be conducted upon the premises;
(d) No one shall be employed from outside the resident family;
(e) Mechanical equipment used shall be only that normally used in, or found in a single-family dwelling."
The city argues that defendants are in violation of subsections (c) and (d) of the above ordinance.
The city basically argues that under subsection (c) the defendants operated a store or shop.
A store is any place where goods are kept for sale, or are sold, whether by wholesale or retail. 83 C.J.S. Store, p. 100 (1953). It should make no difference whether the merchandise to be sold is on the premises or must be ordered for the customer, as in a modern day catalog store, to constitute a store under the above definition.
The record in this case points out that increasingly clients visited 302 Amherst, viewed samples and placed orders. Generally, the merchandise ordered was delivered to the warehouses operated by the defendants, however, there is sufficient evidence to indicate that on numerous occasions merchandise was delivered to the Amherst address and eventually picked up by the purchasers.
In City of Baton Rouge v. Allen, 106 So.2d 740 (La.App. 1st Cir. 1958), this Court held that a registered cosmetician who operated a beauty shop in her home, and who *243 took orders for merchandise from customers, ordered the merchandise, received it and held it until the customers picked it up was not operating a shop or store in violation of basically the same city ordinance as is involved in this case. There we said:
"We do not think that this, coupled with her activities as a beautician, sufficient to constitute her business the operation of a `shop' or `store' within the generally accepted and understood meaning of the terms."
Each case must be decided on its own facts, and thus, though we do not overrule City of Baton Rouge v. Allen, supra, we are of the opinion that the facts presented in this case are more consistent with the generally accepted and understood meaning of the terms "store" or "shop".
Since we have above concluded that the defendants were in violation of Subsection (c) of the ordinance, we pretermit any discussion as to the violation of Subsection (d).
Prescription.
LSA-R.S. 9:5625 provides that actions to enforce zoning restrictions prescribe in two years from the date the municipality first had written notice of the violation.
Though city inspectors had visited the premises previously, once informing one of the defendants that they could not have paid employees under the home occupation exception, and another time determining that there were no visible violations, there is no evidence in the record that the city of Baton Rouge ever received any notice in writing of a violation. Additionally, the notice received by the city of Baton Rouge which resulted in the filing of this lawsuit was well within the two year prescriptive period.
Therefore, for the above and foregoing reasons, the judgment of the trial court in suit number 12050 is affirmed at appellants' costs.
AFFIRMED.