JjLUCIEN C. BERTRAND, Jr., Judge Pro Tem.
This appeal arises from a suit for injunction brought by several residents of Little Farms Subdivision against James Besse, also a resident of the subdivision. Plaintiffs’ suit sought to enjoin Besse from operating a commercial business from his home and further sought a mandatory injunction ordering Besse to comply with certain subdivision building restrictions. Besse excepted to the plaintiffs’ petition on the basis of prescription. The trial court overruled Besse’s exception of prescription and rendered judgment for the plaintiffs on the merits of their claims, ordering ^compliance with four of the six restrictions at issue and enjoining Besse from continuing his commercial activities. Besse has appealed the ruling on prescription and contests the validity of the injunction as to two of the several restrictions at issue and as to the commercial activities. We affirm.
FACTS
All of the parties to this suit own property in Little Farms Subdivision which is located in the Town of Youngsville in Lafayette and Vermilion Parishes. The subdivision was dedicated in 1978, and each lot was sold subject to certain restrictive covenants imposed on the property by the developer.
In 1986, James Besse, who owned an empty lot in the subdivision, approached some of the residents about a home he wanted to build on his lot. He asked if he could build a home and workshop that would not be in compliance with the subdivision restrictions, but that would only be a temporary residence. He told them that he would build a home in compliance with the restrictions when he could afford to, at which time he would convert the first structure into a workshop and outdoor kitchen. The neighbors agreed to Besse’s proposal with the understanding that it would be a temporary arrangement.
Pursuant to this agreement, Besse constructed his home and moved in on May 1, 1987. The house is in violation of the subdivision restrictions in that it is 500 square feet smaller than the minimum size specified, it has a tin roof, and it does not have a two car carport. Besse does not dispute the fact that these characteristics are violative of the covenants governing his property.
Later, Besse put a utility building with metal siding on his lot. He constructed a playhouse for his daughter which has a tin roof and is on concrete piers. He also Uput up a fence which is comprised of four strands of electrified wire. Besse disputes the allegation that these items violate the governing restrictions.
The plaintiffs allege that Besse has not only violated certain building restrictions, he has also violated a restriction of use on the property which prohibits any commercial activity. The plaintiffs contend that Besse operates a commercial enterprise out of his workshop (as Hobo the Handyman) and runs a trucking terminal on his property which involves the coming and going of large moving vans and industrial type trucks. Besse does not dispute these allegations.
*400 In support of his exception of prescription, Besse cites La.C.C. Art. 781 which provides as follows:
Art. 781. Termination; liberative prescription
No action for injunction or for damages on account of the violation of a building restriction may be brought after two years from the commencement of a noticeable violation. After the lapse of this period, the immovable on which the violation occurred is freed of the restriction that has been violated.
Besse contends that his commercial activity and covenant violations were noticeable to the plaintiffs more than two years before suit was filed on May 1,1992. Because the plaintiffs did not act within two years, their cause of action has prescribed and the property has been freed of the restrictions at issue.
Concerning the building restriction violations, the plaintiffs argue, and the trial judge found that prescription was interrupted each and every time Besse acknowledged his violations to his neighbors and that no two year period elapsed without such- an acknowledgment. La.C.C. Art. 3464 provides for the interruption of prescription by acknowledgment:
Art. 3464. Interruption by acknowledgment
Prescription is interrupted when one acknowledges the right of the person against whom he had commenced to prescribe.
| Concerning the commercial activity violation, the plaintiffs asserted that they were not aware of Besse’s commercial use of the property until 1991. The trial judge found that Besse’s “commercial activities in the neighborhood did not become reasonably apparent to his neighbors until the summer of 1991.” Therefore, suit filed in 1992 was timely.
Besse also argues in this appeal that the trial court’s order concerning the roof of his daughter’s playhouse is erroneous because there is no restriction limiting the type of roof that can be put on a playhouse.
ACKNOWLEDGMENT
An acknowledgment sufficient to interrupt the running of prescription as per La.C.C. Art. 3464 may be explicit or implicit and need not be in any particular form. It may be inferred from the circumstances or from the actions of the debtor. See La.C.C. Art. 3464, Revision Comments; Knecht v. Board of Trustees for Colleges and Universities, 525 So.2d 250 (La.App. 1st Cir.), writ denied, 530 So.2d 87 (La.1988), and authorities cited therein.
In Diefenthal v. Longue Vue Management Corp., 561 So.2d 44 (La.1990), the Supreme Court specifically addressed interruption of the two year prescription of the right to enforce certain building restrictions. The Court found that between 1977 and the filing of suit in 1988, the Diefenthal plaintiffs “regularly protested” the defendant’s violations of various subdivision restrictions and were consistently assured that their concerns would be addressed. The Court characterized the defendant’s responses as acknowledgments of the plaintiffs’ rights pursuant to La.C.C. Art. 3464:
An examination of the record shows that violations of the 1977 agreement have been regularly protested. Defendants’ recurring assurances in response to this request constitute acknowledgment |5sufficient to interrupt prescription. C.C. art. 3464. Suit was thus timely filed. [Footnote omitted.]
561 So.2d at p. 55.[1]
In the instant ease, the plaintiffs contend that they were assured of Besse’s intention to comply with the building restrictions in conversations between Besse and certain plaintiffs that took place in 1986, early 1988, late 1988, spring 1990, summer 1990, ahd September 1991. Besse denies that any conversations about his intentions ever took place other than his initial request in 1986 to build his house and the 1991 demand by the *401 plaintiffs to come into compliance which he refused to do. The trial court reached the following conclusions:
Mark Lowrey and Arthur Walters both testified that in November of 1986, defendant told them that he was building a noncomplying house that would be brought into compliance with the restrictions once he had enough money.
In early 1988, before leaving for a job in Antarctica, Mr. Walters testified that defendant told him that he would have enough money upon his return from Antarctica to build a conforming house. Mr. Walters also said that upon defendant’s return from Antarctica in late 1988, defendant told him that as soon as he obtained a permanent job, he would build the house.
Charles Earle testified that defendant told him in the summer of 1990 of his plans to change the roof of his house. Mr. Earle said that he suggested to defendant that the tin roof be replaced with a shingle roof in order to end some of the dissension in the neighborhood over the condition of defendant’s house. Defendant disagreed and said that it would cost too much and went on to say that he would build a complying house in front of the present structure that was in conformity with the restrictions.
In September of 1991, Mark Lowrey, Arthur Walters and Lisa Earle confronted defendant with their concern over his continued violation of the restrictions. When he was asked when he would come into compliance, defendant stated that he would “build the house before | (¡he died.” At this point, plaintiffs felt that they could no longer rely on the assurances of defendant and they hired an attorney to represent their interests.
Our review of the record supports the trial court’s factual findings. James Besse continually acknowledged to his neighbors, prior to the filing of suit, and indeed, even at the trial itself, that he was in violation of subdivision restrictions. He communicated his intention to build a house in compliance with the subdivision restrictions on several occasions. These comments were not specific as to time and were conditioned on Besse’s financial means; nevertheless, in keeping with the rationale of Diefenthal, supra, we find they constitute acknowledgments sufficient to interrupt prescription. Accordingly, we affirm that portion of the mandatory injunction ordering Besse to comply with the building restrictions pertaining to minimum square footage, acceptable roofing material, and a two car carport.
COMMERCIAL ACTIVITY
The plaintiffs contend Besse is operating a commercial enterprise at his residence in violation of the subdivision restrictions. Besse does not deny this allegation; in fact, Besse contends that because he has operated a business from his home since it was built in 1987, the plaintiffs’ cause of action for this violation has prescribed and he is now free to operate any type of business, including a trucking terminal.[2]
Besse argues that his neighbors knew that he made his living as a handyman and often used his workshop for business purposes. He testified that since moving into the house in 1987, he has constructed 10 to 15 sets of cabinets in his workshop |7which he then transported off his property in trucks for delivery to customers. He built a set of bar stools which he sold to one of the plaintiffs herein, although the transaction took place less than two years prior to filing suit. Besse contends that these activities should have put the plaintiffs on notice that he was operating a business from his workshop.
The plaintiffs generally denied knowledge of Besse’s job as a handyman until the summer of 1990. They argue that it was not until 1991, however, when Besse began the trucking business, that his commercial activities became noticeable and apparent. Further, the plaintiffs offered proof that Besse never informed local government and taxing *402 authorities that his workshop was actually used as a place of business.
The trial judge found that Besse’s commercial activities at his home did not become reasonably apparent to his neighbors until the summer of 1991, in the month of June or thereafter. This factual finding rests on credibility determinations made by the trial judge and is not clearly erroneous. As in the cases of Oak Ridge Builders, Inc. v. Bryant, 252 So.2d 169 (La.App. 3d Cir.), writ denied, 259 La. 945, 253 So.2d 384 (1971) and Norton v. Lay, 360 So.2d 239 (La.App. 1st Cir.1978), cited by the plaintiffs, the trial judge concluded that the initial commercial activities of the defendant did not constitute a noticeable violation of the subdivision restrictions so as to toll the running of prescription. We agree with this finding and therefore affirm the order enjoining Besse from engaging in commercial activity on his property in Little Farms Subdivision.
PLAYHOUSE
Besse constructed a playhouse for his daughter in late 1990. (Because suit was filed in May 1992, prescription is not at issue.) The plaintiffs contend the playhouse | ¾⅛ in violation of the subdivision restrictions because it has a tin roof and is on concrete piers. Besse contends that because the restrictions do not specifically address playhouses, the trial judge erred in ordering compliance for this small leisure-type structure. The trial judge relied on restriction #8 which states that corrugated or iron roofing cannot be used on any construction. He further found that the restriction against concrete piers pertains only to houses and not other structures. Therefore, he did not find the concrete piers to be a violation and the plaintiffs have not appealed this conclusion. Concerning the tin roof, we find the trial judge was correct in relying on restriction #8 and find no error in his order to install a conforming roof on the playhouse.
CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to the defendant, James Besse.
AFFIRMED.

. In light of Diefenthal, supra, we find the rationale of Nepveaux v. Fitzgerald, 480 So.2d 346 (La.App. 3d Cir.1985), upon which Besse relies, to be outmoded. Nepveaux characterized the two year period in Art. 781 as preemptive rather than prescriptive. Diefenthal clearly held to the contrary.

. As discussed in Comment (c) to La.C.C. Art. 781, Louisiana courts have held that when an owner uses his property for commercial purposes contrary to restrictions during a period in excess of two years, the property is free from any limitation pertaining to commercial activities. Further, the owner is then entitled to enlarge his business, and even to conduct a business of a different nature.