EASTERN DIST.
*March,* 1858.

MUNICIPALITY NO. 1 *vs.* MUNICIPALITY NO. 2.

MUNICIPALITY
NO. 1
*vs.*
MUNICIPALITY
NO. 2.

APPEAL FROM THE PARISH COURT FOR THE PARISH AND CITY OF
NEW-ORLEANS.

According to the terms of the compromise between the city of New-Orleans, the front proprietors and private claimants of the batture, dated the 20th September, 1820, the entire batture and open space, between New Levee street and the river, in front of the faubourg St. Mary, is dedicated to public uses, and those to which it is naturally destined, as a part of the port of New-Orleans.

The administration of this public place, and the batture on it, is confided exclusively to the second municipality, whose duty it is to administer it in such a manner as to promote the important purpose for which it was dedicated, and not to impede any right to the use of it, to the citizens generally.

The right to take earth and sand from this batture, is not a corporate right, but one common to every inhabitant of the city. The use of this right is to be so regulated, as not to defeat other great objects of the dedication, as well as to protect all the citizens in an equal enjoyment of it.

A perpetual injunction will not be granted by the court in a case where it is not demanded, and where the right to be secured is not a corporate one, but common to every inhabitant.

Nor will an injunction be maintained, when the purpose of the suit is to restrain the action of the city council, when the right claimed is indefinite, and when such injunction might tend to limit a legitimate exercise of authority vested in the council.

This suit commenced by injunction granted on the petition of Municipality No. 1, of the city of New-Orleans, to restrain and inhibit Municipality No. 2, from making certain wharves and constructing works on the batture in front of the faubourg St. Mary, and extending from Common-street below to Delor-street above, embracing the whole front and public space between New Levee-street and the river Mississippi. The plaintiffs further claimed the right and unrestricted privilege to dig and take such quantities of dirt and

EASTERN DIST. March, 1838.

MUNICIPALITY NO. 1 *vs.* MUNICIPALITY NO. 2.

sand as they might want from time to time, without interruption or hindrance. They set up this right and claim under a certain act, transaction, or compromise entered into between the city of New-Orleans of the one part, and the front proprietors and certain private claimants of this batture, dated the 20th September, 1820, in which this right and privilege was confirmed and secured to all the inhabitants of the city generally, and that this space and batture was a public place, dedicated to the public use, for landing, loading and unloading ships, vessels and merchandize, etc., and the use thereof to be regulated by the corporation. The plaintiffs claimed one hundred thousand dollars in damages, for the obstructions put upon the batture, etc.

The defendants denied the right and claim of the plaintiffs as set forth, but admitted they were constructing works, making wharves, filling up the batture and widening the levee along the whole extent of the faubourg St. Mary, and which was within the corporate limits of the 2d Municipality, and subject to its exclusive regulation and control ; according to the provisions contained in the following section of the act of the 11th March, 1836 :

"SEC. 11th. *Be it further enacted, etc.,* That each of the aforesaid corporations shall have the exclusive right to make and enforce all public laws and regulations within their respective limits, and to regulate, and at their own expense, make all improvements to the streets, public squares, wharves and other public property, the use of which is now common : Provided, however, that such regulations do not deprive the inhabitants of the other municipalities of the right of using the same, in common with the inhabitants of the municipality within which such property is situated; and each municipality shall also have the right to designate the particular portions of the landing opposite thereto, which shall be allotted to the different species of boats and vessels : Provided further, that no disposition shall ever be made of the batture in front of the faubourg St. Mary, in violation of the transaction or compromise in relation to said batture, entered

into between the mayor, aldermen and inhabitants of the city of New-Orleans, and Edward Livingston and others, before Hugues Lavergne, notary public, on the twentieth of September, eighteen hundred and twenty; and that the municipality of the upper section of the city of New-Orleans shall not, in any manner, obstruct or impede the inhabitants of any portion of the city of New-Orleans, in the free use and enjoyment of any of their rights on said batture."

The defendants expressly aver, that the works erecting by them are indispensably necessary to the use of this part of the port of the city and of all the inhabitants; that these works were authorized and ordered to be executed by a general ordinance of the city, passed previously to its division into municipalities, and that this municipality has full power under the act of division, above cited, to make the works and regulations in question. They further deny that it is in contravention of the act of compromise of the 20th September, 1820; and aver that this property belongs to the second Municipality, and is subject to its exclusive control, the greater part of the batture having been formed since the date of said act of compromise. They pray that the injunction be dissolved, etc.

The parish judge summed up the evidence and history of the case, and pronounced judgment as follows:

" From the record of a suit tried by the late Superior Court of the territory of Orleans, introduced by the plaintiffs, it appears, that some time in the year 1805, John Gravier, as heir of Bertrand Gravier, instituted against the city corporation of New-Orleans, an action, to be quieted in the exclusive possession of the alluvial ground in front of the suburb St. Mary, commonly called the batture; and for preventing the inhabitants of New-Orleans from trespassing upon said batture, and especially from digging and carrying away the earth from the same. That case, which at the time excited a great deal of feeling in this community, was terminated by a judgment recognizing the right claimed by John Gravier,

EASTERN DIST.
March, 1838.

MUNICIPALITY
NO. 1
vs.
MUNICIPALITY
NO. 2.

and declaring perpetual the injunction which he had obtained at the institution of the suit against the inhabitants of New-Orleans.

" By that judgment, the inhabitants of New-Orleans found themselves deprived of what they, until then, had considered their right, to procure sand and earth on the batture, for the construction of buildings, filling up lots and streets, and other uses. They, notwithstanding the decision of the highest tribunal of the country, continued to assert a right of enjoying the batture, for the purpose before mentioned ; and John Gravier, as well as his co-heirs, and some other parties who had become owners of said batture, experiencing continual difficulties in their enjoyment of their property, deemed it for their interest to enter into a compromise, by which an end would be put to all disturbances.

" That compromise made in form of a donation, was passed before Hugues Lavergne, notary public, on the 20th of September, 1820, between Jean Gravier and all the other possessors of the batture, and the city corporation of New-Orleans. The former made a donation to the latter ; 1st, of a certain portion of said batture, described in the act, situate outside of the levee, which had been built by the donors; 2d, of the levee, so by them built, and of the ground upon which it stood ; 3d, of the whole space necessary for the prolongation of the street of the suburb St. Mary, to said levee ; and 4th, of the soil of Tchoupitoulas-street. The said donation was made under a certain obligation contracted by the donees, among which was one declaring that the several pieces of ground so donated, should remain in the possession of the corporation of New-Orleans, and never be subject to any alienation or seizure for debt, or otherwise ; nor employed to any other public uses than those for which the same are naturally destined ; nor to erect upon the same any constructions or buildings, except, however, the case in which the city council should consider it proper for the interest of the public to authorize the establishment of steam water works, on any part of the batture so donated, which the said council point out for that purpose. It is agreed,

however, that the restriction imposed on the corporation, about erecting constructions or buildings, shall not be so con- strued as to prevent the mayor and city council of New- Orleans, from establishing or causing to be established wharves (*Jettés ou wharfs*) for the accommodation of com- merce, whenever the said mayor and city council shall deem it proper.

" Another condition of the donation, or in other words another obligation assumed by the corporation by the said compromise, is : ' to cause to be repaired or increased, the new levee, donated as aforesaid, in all its extent, so that it shall be *sixty feet wide* at its summit.'

" Again, the donators engage towards the donees who accept of it, to open and raise at their own expense, all the streets of the suburb St. Mary, which are to be prolonged from Tchopitoulas-street to the new levee, a platform twelve feet in length, and at the same width as the street prolonged, with an easy slope (*une rampe én pente douce*) on each side. Here follows the stipulation with regard to the time within which these different works should be executed, and the penalties in case of delay or non-performance, and then comes the following claims : ' It is further agreed that until the streets aforesaid be properly filled up and raised, and until the works at the levee be completed, the city council shall issue orders prohibiting the public from taking earth on any part of the batture donated as aforesaid, except in the space contained between a line corresponding to the pro- longation of Girod-street, and the limits of Wm. W. Mont- gomery's property, and shall direct the city surveyor to attend to the taking of said earth by equal lays, (*par couches égales*).' The other clauses of the donation have nothing to do with the present case.

" By the effect of the donation, or compromise in question, the corporation of New-Orleans acquired, undoubtedly, beside the property of the levee, and the batture outside of it, the right of building wharves on said batture. Did it also acquire the right of widening the levee, or in other words, of

Eastern Dist.
March, 1838.

Municipality
No. 1
vs.
Municipality
No. 2.

making an embankment; or were they prohibited from doing so?

" I am not prepared to say, that the parties to the act in question, had actually such a thing in contemplation, but without going too far it may well be inferred, that, when mentioning the *public uses* for which they considered the batture to be naturally destined, they did not mean to exclude the one in question. Besides the general laws of the country, and especially those having reference to public advantages and convenience, are supposed to be included in every contract, and are not such as to be derogated from by contracting parties. The batture donated was a part of the bed of the river, being outside of the levee (C. C. 448.) By the laws, as they existed at the time of the donation, the corporation had the rights which are consecrated by the following article of our *Civil Code*, 859: 'The corporation of cities, towns and other places, may construct on the public places, in the beds of rivers, and on their banks, all buildings and other works which may be necessary for public utility, for the mooring of vessels and the discharge of their cargoes, within the extent of their respective limits.' In order, therefore, to decide whether the corporation of New-Orleans had the right to widen the levee, or make an embankment, it is only to be inquired whether such a work can be said to be necessary for public utility. From the evidence in this case, I would not hesitate to say that it is, were it only for the loading and unloading of vessels; at all events, city corporations themselves ought to be supposed to know best what is of public utility in that respect. Such appears to have been the opinion of the city council of New Orleans, parties to the act in question; for, by a resolution passed on the 11th of December, 1835, they appropriated an annual sum of twenty thousand dollars for the enlargement of the levee, until it should reach a certain line described in said resolution, which line is still nearer the river than that of the works contracted for by the defendants. *See City Laws, page* 217, *Testimony of J. Pilié, plan* D, *line* D D.

" The city council of New-Orleans, had, anterior to the
11th December, 1835, to wit : on the 27th of October, 1835,
ordered a widening of the levee of suburb St. Mary ; said
widening to be made with dirt from the river, (*See City*
*Laws, page* 210, *article* 5,) for the reasons just expressed. I
am of opinion that by the donation in question, the city cor-
poration of New-Orleans, were not, and could not be deprived
of the right inherent to its existence as a corporation.

" Another question is to be determined by the donation
aforesaid, did the inhabitants of New-Orleans acquire the
right of taking sand or earth on the batture ? It is in evi-
dence, that ever since the formation of the batture, the
inhabitants of New-Orleans, were in the constant habit of
taking from there the sand or earth they stood in need of for
their constructions, for the filling up of their lots, streets, etc. ;
that by the judgment obtained by John Gravier in 1805, they
were prohibited from doing so ; that, notwithstanding that
judgment, they so far persisted, that the compromise of the
20th of September, 1820, became indispensible to allow the
possessors of the batture to enjoy that property. The com-
promise, when *speaking of the public* uses for which the bat-
tures were naturally destined, certainly includes the faculty
of taking earth there. I know it may be said that the word
*public use*, would not generally apply to such a case, but in
the interpretation of contract, the meaning and intention of
the contracting parties is not to be disregarded, and from the
circumstances under which the compromise in question was
entered into, no one can for a moment doubt, that the parties
intended that the inhabitants of New-Orleans should have
the right to take earth on the batture, and I venture to say,
that without the inclusion of such a right, the compromise
would never have taken place. But if any doubt could
remain on the subject, the compromise itself would at once
clear it up. We need only refer to the clause in which it is
agreed, that until the works at the levee be completed, etc.,
the city council shall issue orders prohibiting the public
from taking earth, on any part of the batture donated,
except, etc.

EASTERN DIST.
*March*, 1838.

MUNICIPALITY
NO. 1
*vs.*
MUNICIPALITY
NO. 2.

"The circumstances that the city council of New-Orleans, have, by their ordinances, regulated the manner and places of digging for earth, does not, in my opinion, furnish an argument against the right; and the ordinances thus passed, by regulating the enjoyment of it, must be considered as having had for their object, to make such enjoyment more efficient and certain for the community at large, by preventing an abuse or ill use of it.

"I am, therefore, fully of opinion, that without violating the compromise, the city corporation of New-Orleans, were authorized to build wharves and widen the line, and that the right was secured to all the inhabitants of New-Orleans, to take earth on the batture for the different uses before mentioned.

"By the act of the 18th of March, 1836, dividing the city of New-Orleans into three distinct municipalities, each municipality was vested within its respective limits, with the power which had, until then, been exercised by the corporation of New-Orleans, and among these powers the section 11th of said act, gives to each of the said municipalities that of regulating, and at its own expense making all improvements to the streets, public squares, wharves, and other public property : provided, such regulation do not deprive the inhabitants of the other municipalities of the right of using the same in common with the inhabitants of the municipality within which such property is situated.

"From these provisions it follows, that all the powers which, until the division, had been possessed and exercised by the corporation of New-Orleans, on the batture in question, were invested in the second Municipality, within which the said batture is situated, and as among the powers possessed and exercised by the corporation of New-Orleans, was included that of building wharves and widening the levee. I infer that the second Municipality possesses that power. But in the exercise of it they are not allowed to make such wharves or embankments, as would be calculated to injure the other municipalities, on the legal and equitable principle that no one is allowed to benefit himself at the expense or detriment

of others.   If, therefore, the works undertaken by the second
Municipality, have, as is alleged in the plaintiff's petition, a
*tendency to prevent the navigation of the river,* or to render it
more difficult, and to fill up the port in front of the Municipa-
lity No. 1, and to prevent ships and other vessels from easily
mooring, landing and unloading, on the banks of the river,
within the limits of the Municipality No. 1, they must be
stopped in their progress, and even destroyed.   The question,
therefore, to be examined is, whether those works have such
a tendency.   It is mere question of fact which must be deter-
mined according to the evidence.   Several witnesses have
been heard on this important question ; all men, generally
considered as fully qualified by their special knowledge of
those matters, and by their long experience, to give a correct
opinion on the point in question, with the exception of one,
agree, in considering the works executed until now, as
well as those in contemplation by the Municipality No. 2,
and to which the injunction issued in this case was to put a
stop, as not having the tendency apprehended by the plain-
tiffs.   I, therefore, consider that the action of the plaintiffs, as
far as it has for its object to arrest the works of the
defendants, cannot stand.

   "We now reach the last question in the case, and it is one,
in my opinion, which a little reflection, and especially a little
of that friendly and peaceable feeling and spirit of concili-
ation which ought to exist between citizens of the same
community, ought to have been settled without a recourse to
courts of justice.   Can the second Municipality prevent the
inhabitants of the other parts of the city of New-Orleans,
from digging earth on the present batture, and carrying it
away for their daily and necessary purposes ?   I am clearly of
opinion that they cannot, and that any attempt to do it
would be, not only imprudent but also unjust and illegal.
As I have stated before, I consider that the right of taking
earth on the batture, was finally secured to all the citizens of
New-Orleans, by the compromise of the 20th of September,
1820, and that since the date of that compromise, the corpo-

EASTERN DIST.
March, 1838.

MUNICIPALITY
NO. 1
vs.
MUNICIPALITY
NO. 2.

ration of New-Orleans, had no power to prevent the use of that right by the citizens, but could only regulate such use, so as to make it more efficient for the community. That power which the city council of New-Orleans did not possess, does not belong to the second Municipality, which has no more authority within its extent than the corporation had before the division of the city, but if any doubt could remain on the subject, it would disappear at the reading of the following wise and provident clause contained in the 11th section of act of the 8th of March, 1836, dividing the city of New-Orleans into three municipalities. 'Provided further, that no disposition shall ever be made of the batture in front of the faubourg St. Mary, in violation of the transaction or compromise in relation to said batture, entered into between the mayor, aldermen, and inhabitants of the city of New-Orleans and Edward Livingston and others, before Hugues Lavergne, notary public, on the 20th of September, 1820; *and that the municipality of the upper section of the city of New-Orleans shall not, in any manner, obstruct or impede the inhabitants of any portion of the city of New-Orleans in the free use and enjoyment of any of their rights on said batture.*' Indeed, the second Municipality do not appear to have ever officially denied the right of the citizens of New-Orleans to take earth on the batture in question, except, perhaps, in their answer to the petition of the plaintiffs, where, in my opinion, they go much too far by asserting that that right exists only with the permission of the authorities of Municipality No. 2. I am clearly of opinion, that no such permission is necessary, that the only thing that the authorities of Municipality No. 2 have a right to do, is so to regulate that right, as to make it efficient, and to prevent the destruction of the batture itself, as for example : to oblige persons taking earth, to take it in equal lays, (en couches égales,) as expressed in the compromise of 1820, so as not to dig holes, which would make the batture impracticable. If it was allowed a comparison, I would say that the permission of the authorities of the second Municipality is as unnecessary to get earth on the batture as for the passing on the streets.

" No one needs the permission of any authority to pass in
the streets; but municipal bodies, charged to secure the safety
and convenience of the people at large, possess, evidently,
the right to prevent people from driving their horses and
carriages on the side walks.  Several ordinances or resolu-
tions of the second Municipality have been filed by the
defendants, from which it would appear that the right of the
citizens to take earth from the batture is recognized, but that
its exercise is rather strictly limited : however, in the absence
of laws on the subject, it would be a matter of much difficulty
for a court of justice to declare how far the regulating power
of the right of the citizens in this case can extend, and
where it is to stop.  But whilst in their official acts, the
second Municipality seem to have recognized the right of
the citizens of the whole city to take earth on the batture,
the evidence produced by the plaintiff exhibits acts of oppres-
sion and vexation, practiced, if not by Municipality No. 2 or
its officers, at least by the undertakers of the works, which
certainly deserve censure, and which it was the duty of the
municipality to prevent.  Citizens in the peaceable enjoy-
ment of a right which had never been denied them since the
compromise of 1820, have been ill-treated, and in some
instances, applications made to what was considered the
proper authority, to have the abuse remedied, have been met
with such evasions and obstacles that it has become impossible
to obtain redress, and that men have preferred abandoning
their rights rather than to submit to so much difficulty ;
besides, it was not for Municipality No. 2, to acknowledge
the right of the citizens to take earth on the batture; they
were also bound to render the enjoyment of it possible,
instead of which, it appears that it was attended with utter
impossibility, inasmuch as the embankment by them built,
had no slope by which carts could pass to and from the
batture.  Now, I consider that such slopes must exist, as a
necessary consequence of one of the clauses in the compro-
mise of the 20th September, 1820, wherein it is stipulated,
that at the extremity of each of the streets, prolonged from
Tchoupitoulas-street to the levee, and outside of said levee,

EASTERN DIST.
*March*, 1838.

MUNICIPALITY
NO. 1
*vs.*
MUNICIPALITY
NO. 2.

there should be made 'a platform twelve feet in length, and of the same width as the street prolonged, with easy slope (*une rampe én pente douce*) on each side.' Nothing shows that the second Municipality have taken measures of the kind, and by such neglect alone they have, if not directly, at least indirectly, prevented the access to the batture, and thereby obstructed the inhabitants of the city of New-Orleans, in the free use and enjoyment of their rights on said batture, in violation of the 11th section of the act of 8th March, 1836, that the result may have been owing to the magnitude of the works going on at that place, is possible, but with a little good will and something like an accommodating spirit, matters might have been so arranged as to afford to the citizens some kind of access to the batture.

" From the view I have taken of the subject, had the plaintiffs proved any actual damages suffered by them, which probably they might have done, I would have felt myself justified to award the amount of damage so proved ; but no evidence of damages having been introduced in support of the claim for damages, none can be allowed.

" Considering, therefore, 1st, that the Municipality No. 2, has a right by law, to construct the wharves and embankment which they have undertaken on the batture of faubourg St. Mary. 2d. This said municipality has no right to prevent the citizens of the whole city of New-Orleans to take earth on said batture.

" It is, ordered, adjudged and decreed, that the injunction herein obtained by the plaintiffs against the defendants, so far as it applies to the continuing the construction of the works begun by the defendants on the batture of the suburb St. Mary, be set aside, but that the plaintiffs be quieted in the lawful enjoyment of their right to take earth on said batture, and that the defendants be forever enjoined from disturbing the plaintiffs in the enjoyment of said right, and that the defendants pay the costs."

From this judgment the defendants appealed.

*Mercier*, for the plaintiffs.

*Conrad, Pierce, Rost* and *Lockett,* for the defendants.

EASTERN DIST.
*March,* 1838.

MUNICIPALITY
NO. 1
*vs.*
MUNICIPALITY
NO. 2.

*Bullard, J.,* delivered the opinion of the court.

This suit commenced by injunction issued against the 2d Municipality of the city of New-Orleans, on the petition of the first Municipality, inhibiting the former "from proceeding any further in erecting wharves or other works, on the batture in front of the faubourg St. Mary, until the further order of the Parish Court." The grounds alleged for this proceeding were, that the works then in progress had a tendency to obstruct a *place,* of which the public has the use; to prevent the navigation of the river, or to render it more difficult, and to fill up the port in front of Municipality No. 1, and to prevent ships and other vessels from easily mooring landing and unloading on the banks of the river within its limits.

The injunction was afterwards extended, so as to embrace several individuals engaged in constructing those works, under contracts with the corporation.

The original petition presented by the first Municipality, sets forth that the batture had been enjoyed by the inhabitants of the city, for public uses, in supplying them with the sand and earth necessary for the construction of buildings, filling up streets, lots of ground and side walks, and generally for other improvements in the city, until they were perpetually enjoined from such enjoyments, by a final decree of the late Superior Court, at the suit of Jean Gravier; that afterwards, in 1820, Edward Livingston and others, then proprietors of the batture, entered into a compromise with the city of New-Orleans, by which they ceded and abandoned to them all their rights in the batture, within certain limits, and to the levee constructed upon it, as well as the soil upon which it is situated; in all the soil of Tchoupitoulas-street, the whole extent of the faubourg, giving said street a width of sixty feet, and upon the sole condition, that the lot of ground forming the object of the donation, should remain in the possession of said corporation, inalienable, and never employed for any public uses, except those for which the same was naturally destined; and that no buildings should

EASTERN DIST.
March, 1838.

MUNICIPALITY
NO. 1
vs.
MUNICIPALITY
NO. 2.

be erected on the same, except a steam-pump and wharves, for the facilities of commerce ; that in March, 1836, the city of New-Orleans was divided, by act of the legislature, into three separate municipalities, and that by the eleventh section it was provided, that each municipality should have the exclusive right to make and enforce all public laws and regulations within their respective limits, and to regulate, and at their own expense, make all improvements to streets, public squares, wharves and other public property, the use of which is now common, provided that such regulations shall not deprive the inhabitants of the other municipalities of the right of using the same, in common with the inhabitants of the municipality within which such property is situated, &c., and provided, that no disposition shall ever be made of the batture in front of the suburb St. Mary, in violation of the transaction or compromise above referred to, and that the municipality of the upper section of the city shall not, in any manner obstruct or impede the inhabitants of any part of the city, in the free use and enjoyment of any of their rights on the said batture. The plaintiffs proceed to allege, that the second Municipality, in violation of their rights, and contrary to the provisions of the law, have taken exclusive possession of the batture in front of the suburb St. Mary, and have ordered, and are constructing several works, in violation of the stipulations contained in the act of donation; that the works in question consist of wharves, made to such extent and in such directions, as to render it entirely impossible for the inhabitants of the first Municipality to enjoy their rights, particularly in taking the sand and earth necessary for their streets, buildings and other purposes, the defendants having appropriated to themselves almost all the superficies of sand bottom ; that the second Municipality have opposed the first and its inhabitants in their usual free and public use of said batture, and that a portion of the citizens of the first Municipality, engaged in erecting buildings and filling up lots and streets, have been opposed and obstructed by the defendants in the enjoyment of their rights upon the batture.

EASTERN DIST.
*March*, 1838.

MUNICIPALITY
NO. 1
*vs.*
MUNICIPALITY
NO. 2.

The answer of the defendants admits that they are engaged in the construction of wharves on the margin of the river opposite to the faubourg St. Mary, and forming a part of the port of New-Orleans, but they aver that they have a legal right so to do; that such works are indispensably necessary for the use of that part of the port, and the safety and convenience of the citizens; that such works were ordered and begun by the city authorities before the division of the city into three municipalities; that, as the batture is situated within the second Municipality, it is their exclusive property and under their exclusive control. They deny that they have contravened the compromise in question, and as relates to the carrying of earth or sand from the batture, they deny that the citizens of New-Orleans or any portion of it, have any right to excavate earth from said batture, and transport it elsewhere, except with the permission of the authorities of the second Municipality, and at such times and at such places as they may designate. They conclude by praying that they may be declared to be the true and lawful owners of the batture, that they may be quieted in their possession, and that the injunction may be dissolved.

After a trial below, the court was of opinion, that the second Municipality had a right by law to construct the wharves and embankments which they had undertaken on the batture, and consequently, the injunction was dissolved so far as it applies to the continuing the construction of those works; but, considering that the defendants had no right to prevent the citizens of the whole city from taking earth on the batture, the plaintiffs were by the same judgment quieted in the lawful enjoyment of that right, and the second Municipality was perpetually enjoined from disturbing the plaintiffs in its enjoyment.

In the first part of the judgment, both parties have acquiesced, and the defendants prosecute the present appeal from that part only which inhibits them from disturbing the plaintiffs in the enjoyment of their right to take sand and earth from the batture within the limits of the second Municipality. The inquiry in this court is, therefore, solely

MUNICIPALITY
NO. 1
*vs.*
MUNICIPALITY
NO. 2.

According to the terms of the compromise between the city of New-Orleans, the front proprietors and private claimants of the batture, dated the 20th September, 1820, the entire batture and open space between New Levee-st. and the river, in front of the faubourg St. Mary, is dedicated to public uses, and those to which it is naturally destined, as a part of the port of New-Orleans.

as to the extent and qualifications of that right, and the correlative duties and obligations of the Municipality No. 2, in reference to the same.

We have attentively examined and considered the act of donation of the 20th of September, 1820, between Livingston and others and the city of New-Orleans, as well as the act of the legislature dividing the city into three distinct municipalities, and defining the powers and duties of each. Undoubtedly that contract embraces a dedication to public uses of the property in question, so far as it was an object of private ownership, and its declared uses are those to which it is naturally destined. Being contiguous to the bank of the river, and within the port of New-Orleans, its primary and paramount use is to facilitate the loading and unloading of vessels and other water craft engaged in an extensive and increasing commerce ; hence, the city of New-Orleans reserved the right of building wharves for the facilities of trade whenever they should think proper. The eleventh section of the act of 1836, while it confers on each municipality the exclusive right to make and enforce all public laws and regulations within its limits, and to regulate and at their own expense make all improvements to the streets, public squares, wharves and other public property, the use of which is now common, provides that no disposition shall ever be made of the batture in front of the faubourg St. Mary, in violation of the transaction or compromise in relation thereto,

The administration of this public place, and the batture on it, is confided exclusively to the second Municipality, whose duty it is, to administer it in such a manner as to promote the important purpose for which it was dedicated, and not to impede any right to the use of it, to the citizens generally.

abover eferred to, "and the municipality of the upper section of the city of New-Orleans shall not in any manner obstruct or impede the inhabitants of any portion of the city in the free use and enjoyment of any of their rights on the batture."

The administration of this public property according to the true intention of the contracting parties and of the legislature, was, therefore, confided exclusively to the second Municipality. It is their duty to administer it in such a manner as to promote the important purposes for which it was dedicated, and not to impede any right to the use of it on the part of the citizens generally. That the inhabitants generally have a right to take the dirt or sand necessary for their improve-

ments in the city, under a reasonable regulation on the part of the municipal authorities, appears to us, to result from the transaction itself, in which the donors stipulate, that while they are engaged in constructing the new levee and filling up streets, and until their works are completed, the city council shall forbid the public to take away earth or sand from any part of the batture, except within a limited extent. From the contemporaneous construction by the city council, their exercising jurisdiction over the whole city, who passed various ordinances to regulate the exercise of this right, and from the consideration that the act of the legislature continued those ordinances in force until they should be duly repealed, (section 10,) and that the second Municipality appears to have pursued the same policy.

The use of the batture, therefore, is, in our opinion, to be regulated by municipal authority ; and those regulations so framed as to accord equal priviliges and equal facilities to the inhabitants of every part of the city, and consistent at the same time with the more important primary purpose of the *original dedication, that of facilitating* the landing and mooring, the lading and unlading of vessels, and the conveyance of merchandise and produce between the river and the city, in the manner least burdensome to the producers and consumers. The pretensions of defendants, as set up in their answer, to the exclusive ownership of the property in question, and those of the plaintiffs, as evinced in their ordinance of the 9th of February, 1837, to take one hundred thousand cubic yards of sand from the batture *ad libitum*, (if, indeed, either party has seriously urged such pretensions,) are, in our opinion, equally unfounded and preposterous.

The right to take dirt or sand is not a corporate right, but one common to every inhabitant of the city of New-Orleans ; and it might tend to defeat the great object of the dedication, if every one were allowed the unregulated right to excavate where and to what extent they might think proper.

It has not been insisted upon in argument, nor does it appear to have been the opinion of the Parish Court, that the ordinance of the second Municipality, regulating the

9    VOL. XII.

*Margin notes:*

EASTERN DIST. *March*, 1838.

MUNICIPALITY NO. 1 *vs.* MUNICIPALITY NO. 2.

The right to take earth and sand from this batture, is not a corporate right, but one common to every inhabitant of the city. The use of this right is to be so regulated, as not to defeat other great objects of the dedication, as well as to protect all the citizens in the equal enjoyment of it.

Eastern Dist.
March, 1838.

————————

MUNICIPALITY
NO. 1
vs.
MUNICIPALITY
NO. 2.

exercise of this right, is null and void, because it violates the transaction or the act of 1836; nor could such a question be properly entertained in this case, because the nullity of that ordinance is not alleged. If it be void, every citizen might disregard it, and an attempt to enforce it would be a trespass. It is not the ordinance which is complained of, but the vexatious manner in which certain individuals have been treated while endeavoring to take earth from the batture. We cannot presume that those acts of annoyance and vexation were authorized by the second Municipality, and if they were, the perpetrators would be amenable to the laws, notwithstanding such authorization, if done in violation of private rights, as well as in contravention of the ordinance itself. The power to regulate does not imply the right to destroy and unjustly to impede; and we concur with the Parish Court in opinion, that in the absence of positive law on the subject, it would be a matter of much difficulty for a court of justice to declare how far the regulating power in this case ought to extend, and where it ought to stop, and to lay down any general rule. Of one thing, however, we have no doubt, that the regulation ought to afford equal rights and equal facilities to all, and such as to prevent abuses, and especially not to defeat other great purposes of public utility.

Thus far the opinion of this court coincides substantially with that of the Parish Court; but in the conclusion, we are compelled to differ. As soon as the question as to the right of the second Municipality to proceed with the wharves and embankments, to which alone the injunction sued out was applicable, and the further question as to the exclusive ownership asserted by the defendants as a reconventional demand, were disposed of, the remaining question appears to us to be one merely of trespass, and relates to the alleged annoyances and acts of oppression towards individuals, not shown to have been authorized by the defendants. It is obvious, that the corporation is without capacity to maintain an action for damages for a *quasi* offence done to a private citizen. We think, therefore, there was error in perpetually

enjoining the defendants from disturbing the plaintiffs in the enjoyment of the right in question: 1st, because such injunction was not demanded, but only damages; and 2d, because the right itself, being necessarily under a lawful and reasonable regulation by the defendants, is so indefinite as to furnish a subject of perpetual dispute; and the injunction itself, by restraining the legitimate action of the city council, might interfere with other rights equally sacred.

It is, therefore, ordered, adjudged and decreed, that the judgment of the Parish Court be annulled and reversed, and proceeding to render such judgment as in our opinion should have been given below; it is further ordered and adjudged, that the injunction allowed at the inception of this suit, be dissolved; that the claim for damages on the part of the plaintiffs be rejected, and that the claim of the defendants to be recognized as the exclusive owners of the property in question, be also dismissed, reserving to them their authority to administer the same for the public use, according to law; and that the costs of both the courts be paid by the plaintiffs and appellees.