MAX N. TOBIAS, JR., Judge.
 

 | ,The plaintiffs/appellants, Apasra Properties, LLC (“Apasra”) and O’Reilly Properties, LLC (“O’Reilly”), filed this action against the City of New Orleans (“the City”) and the Vieux Carre Commission (“VCC”), seeking to enjoin the administrative proceedings brought against them by the City and the VCC. Proceedings were and are pending before the City’s Administrative Adjudication Bureau for Public Health, Housing and Environmental Violations, Department of Health (“AAB”) against Apasra and O’Reilly. They contend that the City’s ordinances, M.C.S. 6-31,
 
 et seq.,
 
 creating the AAB to adjudicate alleged violations of ordinances of the City and VCC, are unconstitutional and the enforcement of city code violations rest exclusively with the City’s Municipal Court. The trial court denied the plaintiffs/appellants’ request for a writ of preliminary injunction finding that, pursuant to M.C.S. 6-31,
 
 et seq.,
 
 the AAB, whose established authority is consistent with the City’s Home Rule Charter, shares concurrent jurisdiction with the City’s Municipal Court to adjudicate the plaintiffs/appellants’ alleged municipal ordinance violations. For the reasons that follow, we affirm the | gtrial court judgment that denied the writ of preliminary injunction. M.C.S. 6-31,
 
 et seq.
 
 is not unconstitutional and the AAB and the City’s Municipal Court do have concurrent jurisdiction over some issues; however, we hold that the AAB and Municipal Court do not have concurrent jurisdiction over the claims now pending against Apasra and O’Reilly. We remand this matter to the trial court for further proceedings, including allowing the plaintiffs/appellants to amend their pleadings to state a cause of action in conformity with the reasons set forth herein.
 

 FACTUAL BACKGROUND AND COURSE OF PROCEEDINGS BELOW
 

 Apasra and O’Reilly are owners of immovable property located on Decatur Street in New Orleans, all of which are
 
 *618
 
 situated within the boundaries of the Vieux Carre,
 
 [1]
 
 as defined by Chapter 166 of the Municipal Code of the City (“the Code”).
 
 [2]
 
 The City, through the VCC, inspected and cited four buildings owned by the plaintiffs/appellants, respectively, for alleged violations of historic district ordinances found in the Code at Article IV, Sections 166-21, 166-83, 166-93, 166-35, 166-89, and 166-91 of Chapter 166. According to the record, all four properties were cited by the VCC multiple times and Notice of Violations letters forwarded by certified mail to the plaintiffs/appellants informing them that their ^violations were set to be heard before the City, through the AAB. Some of the alleged violations have been adjudicated and others remain pending.
 
 [3]
 

 The plaintiffs/appellants jointly filed a Petition for Temporary Restraining Order, Preliminary Injunction and Declaratory Judgment seeking to enjoin the administrative proceedings brought against them by the defendant, asserting the unconstitutionality of M.C.S. 6-31
 
 et seq.
 
 Specifically, the prayer of Apasra’s and O’Reilly’s petition reads as follows:
 

 WHEREFORE, plaintiffs, Apasra Properties, LLC and O’Reilly Properties, LLC, pray that the defendants, City of New Orleans and Vieux Carre Commission, be cited to appear and answer and after due proceedings had there be judgment herein enjoining the enforcement of the ordinance contained in Code Section 6-31 through 6-41 against the plaintiffs for Vieux Carre violation on Chapter 166 of the code, or declaring same to be unconstitutional; and that a preliminary injunction be issued after a hearing herein enjoining the enforcements of the ordinance of the City of New Orleans contained in Code Section 6-31 through 6-41 against the plaintiffs during the pendency of these proceedings; and that a temporary restraining order issue herein without a hearing until the hearing on the preliminary injunction; and for all general and
 
 *619
 
 equitable relief and all costs of these proceedings!
 
 [4]
 
 ] [Reproduced verbatim.]
 

 |40n the date of the filing of the petition, the trial judge granted a temporary restraining order without bond, ordering the City and the VCC to refrain and desist from any attempted enforcement of City Code Sections 6-31 through 6-45 pending the hearing on the preliminary injunction.
 
 [5]
 

 At the hearing on the preliminary injunction, all evidence was introduced via the verified pleadings and affidavits per La. C.C.P. art. 3609 and the matter was taken under advisement. On 6 March 2009, the trial court, without assigning oral or written reasons, issued a judgment denying the plaintiffs/appellants’ request for a writ of preliminary injunction. The court effectively held that the Code,
 
 ie.,
 
 M.C.S. 6-31,
 
 et seq.,
 
 authorizing the creation of the AAB and establishing the procedure by which the AAB operates, “... create[s] a court with jurisdiction concurrent with that of the Municipal Court.” The court ruled that the provisions of M.C.S. 6-31,
 
 et seq.
 
 are consistent with the provisions of the City’s Home Rule Charter, and that the violations alleged against the plaintiffs/appellants fall within the jurisdiction of the AAB as set forth in M.C.S. 6-31,
 
 et seq.
 

 Apasra and O’Reilly timely appealed the judgment asserting the trial court erred in denying their request for injunctive relief prohibiting the adjudication of proceedings currently pending before the AAB on four grounds: (1) adjudication of the charges against them by the AAB violates the 1974 La. Const, art. I §§ 1 and 2 and art. V, §§ 1, 15, and 32, particularly in light of the court’s finding that “M.C.S. 6-31[sic]
 
 et seq.,
 
 attempts to create a court with jurisdiction concurrent with that of the Municipal Court;” (2) the creation of the AAB violates City Home Rule Charter § 4-103, which states that “no department nor board shall be created | sexcept as provided in this Chapter;” (3) the plaintiffs/appellants’ alleged violations are not “health, housing or environmental” violations as defined in M.C.S. 6-31,
 
 et seq.;
 
 and (4) La. R.S. 13:2575 does not confer authority to maintain an administrative adjudication bureau for the City since the City’s current population does not meet the applicable minimum of 450,000 individuals. We find no merit to the plaintiffs/appellants’ assignments of error numbers (1), (2), and (4), and specifically recognize that 1921 La. Const, art. XIV, § 22(A) provides the requisite authority for the City to create the AAB to adjudicate violations of the City’s and VCC’s ordinances respecting the Vieux Carre, and that 1974 La. Const, art. VI, § 17 retained this authority for the VCC. However, we agree with the plaintiffs/appellants that, as currently written, M.C.S. 6-31,
 
 et seq.
 
 does not vest in the AAB jurisdiction to adjudicate historical violations such as those at issue in the instant case. Accordingly, we find the appellant’s third assignment of error has merit; however, for reasons set forth
 
 infra
 
 and in view of the prayer in the petition, we cannot grant the plaintiffs/appellants the relief that they request.
 

 LAW AND ANALYSIS
 

 Adjudication by the AAB of the charges against the plaintiffs/appellants for violations of the VCC does not violate the Louisiana Constitution of 1974.
 

 Neither the AAB nor the VCC is a
 
 *620
 
 court.
 
 [6]
 
 Sections 1, 15, 20, and 32 of article V of the 1974 Louisiana Constitution state what courts are allowed in Louisiana. The VCC is a historic preservation authority charged with regulating those properties located .within the physical boundaries delineated by 1921 La. Const. art. XIV, § 22(A). The original VCC was established by City ordinance in | fil925 to preserve those Vieux Carre structures of special historic interest whose old, quaint, and unusual architectural construction made them objects of special interest. However, this VCC lacked any statutory authority to effectuate preservation of these structures. Recognizing this impediment and the historical and architectural importance of the Vieux Carre, 1921 La. Const. art. XIV, § 22(A) was amended, authorizing the New Orleans City Council to create the current VCC.
 
 See City of New Orleans v. Bd. of Dir. of the Louisiana State Museum,
 
 98-1170, p. 2 (La.3/2/99), 739 So.2d 748, 750.
 

 La. Const, art. XIV, § 22(A), as amended, was divided into six sections entitled: creation and membership, purpose, definition of boundaries, tax exemption for certain buildings, acquisition of buildings, and duties of the commission. The amendment provided in pertinent part:
 

 Section 22(A). Creation; membership. The Commission Council of the City of New Orleans is hereby authorized to create and organize a Commission to be known as the Vieux Carre Commission, to be appointed by the Mayor of said City with the advice and consent of the its Commission Council....
 

 Purpose. The said Commission shall have for its purpose the preservation of such buildings in the Vieux Carre section of the City of New Orleans as, in the opinion of said Commission, shall be deemed to have architectural and historical value, and which buildings should be preserved for the benefit of the people of the City of New Orleans and the State of Louisiana, and to that end the Commission shall be given such powers and duties as the Commission Council of the City of New Orleans shall deem fit and necessary.
 

 Vieux Carre Section defined. The Vieux Carre Section of the City of New Orleans is hereby defined to comprise all that area within the City Limits of the City 17of New Orleans contained within the following boundaries: The River, Uptown side of Esplanade Avenue, the River side of Rampart Street, and the lower side of Iberville Street.
 

 Buildings; tax exemption; preservation. ...
 

 Buildings; acquisition. ...
 

 Duties of commission. Hereafter and for the public welfare and in order that the quaint and distinctive character of the Vieux Carre section of the City of New Orleans may not be injuriously affected, and in order that the value to the community of those buildings having architectural and historical worth may not be impaired, and in order that a reasonable degree of control may be exercised over the architecture of private and semi-public buildings erected on or abutting the public streets of said Vieux Carre section, whenever any application is made for a permit for the erection of any new building or whenever any application is made for a permit for alterations or additions to any existing building, any portion of which is to front on
 
 *621
 
 any public street in the Vieux Carre section, the plans therefor, so far as they relate to the appearance, color, texture of materials and architectural design of the exterior thereof shall be submitted, by the owner, to the Vieux Carre Commission and the said Commission shall report promptly to the Commission Council its recommendations, including such changes, if any, as in its judgment are necessary, and the said Commission Council shall take such action as shall, in its judgment, effect reasonable compliance with such recommendations, or to prevent any violation thereof.
 

 The Commission Council of the City of New Orleans may, by ordinance or otherwise, camj the above and forgoing provisions into effect.
 

 La. Const. art. XIV, § 22(A)(1921) (Emphasis added by underlining).
 
 See also City of New Orleans, supra
 
 at pp. 2-3, 739 So.2d at 750-751.
 

 Acting pursuant to this enabling amendment, on 3 March 1937 the City created the VCC by Ordinance No. 14,538.
 
 See
 
 NEW ORLEANS, LA., COMMISSION COUNCIL SERIES No. 14,538 (1937). The City of New Orleans |shas amended the ordinance’s provisions several times; however, it has consistently retained its substance.
 
 [7]
 

 See City of New Orleans, supra
 
 at pp. 2-4, 739 So.2d at 750-752. Accordingly, we find the VCC is constitutionally authorized and exercises state police power to regulate the use of property within the Vieux Carre for the purpose of historic preservation. The 1974 Louisiana Constitution retained the authority for the VCC in article VI, § 17.
 
 [8]
 
 Accordingly, the specific provisions of 1921 La. Const, art. XIV, § 22(A) are retained as law coequal with other constitutional language. Moreover, 1921 La. Const, art. XIV, § 22(A), whose authority was retained by 1974 La. Const, art. VI, § 17, specifically provided the City with authority “by ordinance or otherwise,” to carry into effect the provisions set forth therein. Thus, we find the City and/or the VCC are constitutionally empowered to enforce the historic preservation laws and regulations through several procedural mechanisms, including the levying of civil penalties through administrative adjudication or criminal prosecution through the City’s Municipal Court. Further, the City’s AAB is constitutionally (and statutorily per La. R.S. 13:2575, discussed infra) empowered to enforce historic preservation laws and ordinances
 
 if and only if
 
 the City enacts an ordinance specifically granting it the authority to do so.
 

 Creation of the AAB does not violate the City’s Home Rule Charter
 

 In their second assignment of error, Apasra and O’Reilly contend that the creation of the AAB violates the City’s Home Rule Charter because § 4-103 | ciforbids the creation of any board or department, except as specifically authorized within the provisions of the Charter itself. They aver that § 9-101 of the Charter defines a “board” to include “... board, commissions, authorities and other public
 
 *622
 
 bodies except the Council,” and because the AAB is a “public body,” it could not be created in the absence of an amendment to the Home Rule Charter. We disagree. Article VI, § 4 of the Louisiana Constitution of 1974, which grants the City the power to initiate and enforce zoning ordinances within the city boundaries, provides:
 

 § 4. Existing Home Rule Charters and Plans of Government
 

 Section 4. Every home rule charter or plan of government existing or adopted when this constitution is adopted shall remain in effect and may be amended, modified, or repealed as provided therein. Except as inconsistent with this constitution, each local government subdivision which has adopted such a home rule charter or plan of government shall retain the powers, functions, and duties in effect when this constitution is adopted. If its charter permits, each of them also shall have the right to powers and functions granted to other local governmental subdivisions.
 

 Three primary, interrelated sources of the City’s power to initiate legislation and regulation exist: 1974 La. Const, art. VI, § 4; the preexisting city home rule charter; and any amendments to the charter, subsequent to the adoption of the constitution, made pursuant to methods provided by the charter.
 
 City of New Orleans v. Bd. of Comm’rs of Orleans Levee Dist.,
 
 93-0690, p. 8 (La.7/5/94), 640 So.2d 237, 244. Article VI, § 4 constitutionally maintains the preexisting City charter in effect, including the powers, functions, and duties provided for by that charter, except as inconsistent with the 1974 Constitution.
 
 Id.
 
 Section 4 further |inprovides that subsequent to the adoption of the 1974 Constitution, the City’s charter may be amended, modified, or repealed pursuant to the methods set forth in the charter. In effect, Section 4 constitutionalizes the City’s charter, as amended by the local electorate according to methods provided by the charter, which are not inconsistent with provisions of the 1974 Constitution.
 
 [9]
 

 As previously noted, the VCC was created prior to the City being granted Home Rule Charter authority. Specifically, section 22(A) was adopted fourteen years before the constitutional amendment authorizing Home Rule Charter status for the City of New Orleans.
 
 Cf,
 
 1921 La. Const, art. XIV, § 22, as amended by 1950 La. Acts No. 551. This distinction is noteworthy because 1974 La. Const, art. VI, § 17 retained 1921 La. Const, art. XIV, § 22(A), and accordingly, the City’s Home Rule Charter may not conflict with the provisions of section 22(A). 1974 La. Const, art. VI, § 4;
 
 see City of New Orleans v. Bd. of Comm’rs of Orleans Levee Dist., supra
 
 at pp. 7-9, 640 So.2d at 243-44 (holding that preexisting home rule municipalities and parishes may exercise within them boundaries any legislative powers not in conflict with the Constitution). Because 1921 La. Const, art. XIV, § 22(A) already granted the City the authority to take whatever action it deemed necessary to ensure compliance with preserving the architectural and historical value of the property designated as the Vieux Carre, which we find includes the right to create the AAB, no need existed for an amendment to thejij City’s Charter for purposes of creating the AAB. Consequently, we find that
 
 *623
 
 the creation of the AAB does not violate the City’s Home Rule Charter.
 
 [10]
 

 La. R.S.13:2575 confers upon the City the authority to maintain an administrative adjudication bureau.
 

 In addition to the constitutional grant of the authority to the City, La. R.S. 13:2575 explicitly authorizes the VCC to prosecute historic violations through the administrative adjudication process. Paragraph A of La. R.S. 13:2575 provides:
 

 Any municipality or parish having a population of four hundred twenty-five thousand or more may prescribe civil fines for violation of public health, housing, fire code, environmental, and historic district ordinances in the municipality or parish by owners of immovable property, their agents, tenants, or representatives pursuant to the procedures for administrative adjudication provided in this Chapter. For the purposes of this Chapter, “housing violations” shall encompass only those conditions in privately owned structures which are determined to constitute a threat or danger to the public 112health, safety or welfare and/or to the environment, or a historic district. (Emphasis added.)
 

 The VCC was the only historic preservation commission in the state authorized by the Louisiana Constitution of 1974 at the time it was adopted. Thereafter, the Administrative Procedure Act (1978 La. Acts No. 252) redefined and expanded the definition of “agency,” evidencing the Legislature’s intent to expand the applicability of the Act. Specifically, 1974 La. Const, art. VI, § 17 provides:
 

 Subject to uniform procedures established by law, a local governmental subdivision may (1) adopt regulations for land use, zoning, and historic preservation, which authority is declared to be a public purpose; (2) create commissions and districts to implement these regulations; (3) review decisions of any commission; and (4) adopt standards for use, construction, demolition, and modification of areas and structures. Existing constitutional authority for historic preservation commissions is retained. (Emphasis added).
 

 Thus, we find the Louisiana Constitution of 1974, which retained the au
 
 *624
 
 thority for the VCC, and La. R.S. 13:2575 specifically empower the City to enact ordinances and to exercise state police power in order to regulate the use of property situated within the Vieux Carre for the purpose of historic preservation, including the properties owned by the plaintiffs/appellants that are the subject of the instant litigation. This authority may be exercised by the AAB if a city ordinance specifically grants it the authority to do so.
 

 The plaintiffs/appellants erroneously contend in their fourth assignment of error that the provisions of La. R.S. 13:2575 A do not apply to the City because the current population, as set forth in the U.S. Census Bureau (The New Orleans Index, August 2009) Population Division, is below the minimum established by La. R.S. 13:2575 for exercise of the powers authorized by the section. However, | ^pursuant to La. R.S. 1:11, “[ejxcept as otherwise provided, the number of inhabitants of a political subdivision is that shown by the latest regular or special census.” The last census conducted in the United States was in 2000, at which time the population of New Orleans totaled 484,674, and this figure will continue to apply for purposes of a statutorily required population until the new regular United States decennial census results are released for 2010.
 

 The City’s Municipal Code does not provide authority for the AAB to adjudicate the plaintiffs!appellants’ alleyed violations as they are not “health, housing or environmental” violations as defined in M.C.S. 6-31, et seq.
 

 We now turn to the ordinances enacted by the City to determine whether it has exercised its constitutional and statutory authority to regulate and adjudicate historic preservation violations. A review of the ordinances actually adopted by the City reveals that, while it has enacted provisions adopting the administrative adjudication procedure to handle violations of “public health, housing, and environmental ordinance(s),” it
 
 has not
 
 enacted provisions adopting the administrative adjudication procedure in connection with historic preservation violations.
 

 Section 6-32 of the City’s Municipal Code provides:
 

 Any agency of the city having a responsibility for the enforcement of any public health, housing or environmental ordinance may impose civil fines, penalties, costs, and fees for violations of such ordinances by the owners of immovable property or their agents, tenants or representatives, pursuant to the procedures for administrative adjudication in this article.
 

 M.C.S. 6-31 defines “housing violations” as follows:
 

 Housing violations
 
 means
 
 only
 
 those conditions in privately owned structures which are determined to
 
 constitute a threat or danger to the public health, safety and welfare and/or to the environment;
 
 provided, however, that nothing in this article shall be construed to | ^affect activities which occur on the premises of manufacturing facilities and which are regulated by title 30 of the Louisiana Revised Statutes. (Emphasis added by underlining.)
 

 Unlike La. R.S. 13:2575, which was amended in 1992 to include authority to provide for adjudication of public health, housing, fire code, environmental
 
 and
 
 historic district violations, the City did not opt to correspondingly amend the provisions of M.C.S. 6-31 to include within the definition of “housing violations” historic district violations. Additionally, while M.C.S. 6-34 authorizes hearing officers who have been appointed and sworn in accordance with section 6-33 “to hear and decide public health, housing and environmental violations,” including such matters
 
 *625
 
 as they pertain to the Vieux Carre in Chapter 166 of the Code, we find that neither the hearing officer nor AAB is authorized under the Code as currently written to adjudicate violations pertaining to the architectural or historical value of a structure, which would include the violations allegedly committed by Apasra and O’Reilly.
 
 [11]
 

 We find “housing violations” as defined by the Code and as found in M.C.S. 166-121 can be adjudicated by a hearing officer or the AAB, since they potentially pose a “threat or danger to the public health, safety, and welfare;” they would include, but not be limited to, situations where a property owner or legal custodian fails to repair a building containing any of the following defects:
 

 | i5(l) those which have parts thereof which are so attached that they may fall and injure members of the public or property;
 

 (2) deteriorated or inadequate foundation;
 

 (3) members of exterior walls, partitions or other vertical supports that split, lean, list or buckle due to defective material or deterioration;
 

 (4) members of exterior walls, partitions, or other vertical supports that are of insufficient size to carry imposed loads with safety;
 

 (5) members of exterior ceilings, roofs, ceiling and roof supports, balconies, galleries, porches or steps (stairs, stairways) or other exterior horizontal members which sag, split or buckle due to defective material or deterioration;
 

 (6) members of exterior ceilings, roofs, ceiling and roof supports, balconies, galleries, porches or steps (stairs, stairways) or other exterior horizontal members that are insufficient in size to carry imposed loads with safety;
 

 (7) exterior fireplaces or chimneys which list, bulge or settle due to defective material or deterioration;
 

 (8) exterior fireplaces or chimneys which are of insufficient size or strength to carry imposed loads with safety;
 

 (9) deteriorated, crumbling or loose plaster on the exterior;
 

 (10) deteriorated or ineffective waterproofing or exterior walls, roofs, foundations or floors, including broken windows or doors;
 

 1 ifi(ll) defective or lack of weather protection for exterior wall coverings, including lack of paint, or weathering due to lack of paint or other protective covering;
 

 (12) any fault or defect in the building which renders the same structurally unsafe or not properly watertight; and
 

 (13) defective or deteriorated exterior or floor supports; or exterior flooring or floor supports of insufficient size to carry imposed loads with safety.
 

 See
 
 M.C.S. 166-121.
 

 In the instant case, Apasra and O’Reilly have been charged with violations limited to signage, failure to submit plans for exterior changes, failure to preserve the architectural and historical value, and
 
 *626
 
 working without a permit. We find that these alleged violations do not fall within the purview of “housing violations” as defined by the M.C.S. 6-31 since they do not “constitute a threat to the public health, safety, and welfare and/or to the environment.” Accordingly, we find that the AAB does not presently have authority pursuant to M.C.S. 6-31,
 
 et seq.
 
 to adjudicate the violations presently alleged against Apasra and O’Reilly. Rather, jurisdiction for prosecuting these alleged violations exists only in the City’s Municipal Court.
 

 The failure of Apasra and O’Reilly to pray for a permanent injunction in their petition tiled in the trial court.
 

 Our review of the plaintiffs/appellants’ original petition discloses that whereas Apasra and O’Reilly sought a temporary restraining order (“TRO”) and writ of preliminary injunction, they failed to pray for or seek a permanent 1 |7injunction. We discuss the issue because La. C.C.P. arts. 927 B, 2164, and 2129 requires us to do so. A trial court should not entertain or grant a request for a TRO and should not consider issuing a preliminary injunction in the absence of a prayer for a permanent injunction contained within the plaintiffs petition.
 
 Municipality No. 1 v. Municipality No. 2,
 
 12 La. 49, 67, 1838 WL 722 (1838). That is, except in those specific circumstances allowed by law,
 
 [12]
 
 the granting of a TRO and preliminary injunction requires the posting of a bond to protect against the wrongful issuance of the TRO and/or preliminary injunction. La. C.C.P. art. 3610. A permanent injunction requires no bond. Further, a preliminary injunction may be tried on verified pleadings and affidavits pursuant to La. C.C.P. art. 3609, but a permanent injunction requires proof as in ordinary cases.
 
 Gaumnitz v. Williamson,
 
 36,177, p. 9 (La.App. 2 Cir. 8/14/02), 824 So.2d 531, 536. A preliminary injunction issues to maintain the status quo upon a prima facie showing that the party seeking it is highly likely to prevail at the trial of the permanent injunction and that he will suffer irreparable injury if the injunction does not issue.
 
 General Motors Acceptance Corp. v. Daniels,
 
 377 So.2d 346, 348 (La.1979);
 
 ANR Pipeline Co. v. Louisiana Tax Com’n,
 
 07-2282, p. 7 (La.App. 1 Cir. 10/17/08), 997 So.2d 105, 110;
 
 Metro Riverboat Associates, Inc. v. Bally’s Louisiana, Inc.,
 
 97-1672, p. 10 (La.App. 4 Cir. 1/14/98), 706 So.2d 553, 558-559;
 
 HCNO Services, Inc. v. Secure Computing Systems, Inc.,
 
 96-1693, 96-1753, pp. 10-11 (La.App. 4 Cir. 4/23/97), 693 So.2d 835, 841-842. In the case at bar, the plaintiffs/appellants did not pray for or seek a permanent injunction; thus their petition fails to state a [iscause of action for any form of injunctive relief.
 
 See Municipality No. 1 v. Municipality No. 2, supra;
 
 La. C.C.P. art. 3601,
 
 et seq.
 
 Thus, the trial court did not err in dissolving the temporary restraining order and denying the preliminary injunction.
 

 Nevertheless, Apasra and O’Reilly did pray for and seek a declaratory judgment pursuant to La. C.C.P. art. 1871,
 
 et seq.
 
 Our discussion hereinabove therefore is relegated to whether the trial court should have granted declarative relief to the plaintiffs/appellants prohibiting the AAB from adjudicating the claims against them. A claim for declaratory relief is not a summary proceeding; it requires a trial
 
 *627
 
 on the merits where each party has an opportunity to present evidence in a form other than verified pleadings and affidavits. La. C.C.P. arts. 1879 and 2592. Therefore, a merits trial as to whether the plaintiffs/appellants are required to the relief they seek is required.
 

 We have noted that Apasra’s and O’Reilly’s petition is deficient in certain respects for the relief they seek. For example, we have concluded that the AAB is constitutionally authorized to hear claims such as those at issue in this case if an ordinance of the City grants them the authority to do so; the AAB does not presently have that authority for the violations alleged by virtue of a City ordinance. In the interests of justice, we remand this matter to the trial court, and the plaintiffs/appellants, in their discretion, may amend their petition to seek appropriate relief.
 

 ^CONCLUSION
 

 Article XIV, § 22(A) of the 1921 Louisiana Constitution provides the requisite authority for the City, by ordinance, to create the AAB to adjudicate violations of ordinances respecting the Vieux Carre. The VCC also has jurisdiction to hear such matters. Article VI, § 17 of the Louisiana Constitution of 1974 retained this authority for the City. As written, however, M.C.S. 6-31,
 
 et seq.
 
 does not vest in the AAB jurisdiction to adjudicate
 
 historical preservation violations
 
 such as those at issue in the instant case. Jurisdiction for these violations currently rests in the City’s Municipal Court, or such other courts of competent jurisdiction as may be proper. We remand this matter to the trial court for further proceedings and upon remand, the plaintiffs/appellants are granted leave to amend their petition. The City’s Municipal Court and the AAB at present have some concurrent jurisdiction, but that concurrent jurisdiction does not extend to those matters which the plaintiffs/appellants seek to prevent the City and its boards from enforcing against them. The decision of the trial court denying the writ of preliminary injunction is affirmed.
 

 AFFIRMED AND REMANDED.
 

 [1]
 

 . Apasra owns immovable properties located at 613 and 1101 Decatur Street. O’Reilly owns immovable properties' located at 200 and 214 Decatur Street.
 

 [2]
 

 . M.C.S., Section 166-2 identifies the Vieux Carre as that section of the city “defined to compromise all that area within the city limits within the following boundaries: the river, uptown side of Esplanade Avenue, the riverside of Rampart Street and the lower side of Iberville Street.”
 

 [3]
 

 . According to the defendants, relative to the property located at 214 Decatur Street, O'Reilly was found guilty of violating the following ordinances and sections of the Code: (1) failure to remove non-conforming sign(s) at a closed business: (2) failure to submit plans for exterior changes; (3) failure to preserve architectural and historical value; (4) excessive signage; (5) working without a permit; and (6) installing signage without a permit. The scheduled adjudication hearing for the violations against O'Reilly's property located at 200 Decatur Street was continued and the case has not yet been decided. With respect to the property located at 1101 Decatur Street, Apasra was found guilty of violating the following ordinances and sections of the Code: (1) failure to preserve architectural and historical value; (2) failure to submit plans for exterior changes; (3) installing signfs) without a permit; and (4) excessive signage. The scheduled adjudication hearing for the violations against Apasra's property located at 613 Decatur Street was continued and the case has not yet been decided. Apas-ra was found guilty of violating 21145 M.C.S., Section 105: working without a permit. In addition, regarding the 613 Decatur Street property, violation charges for "removing several 'Stop Work’ notices and continuing to work without permits" were brought against Lenny Motwani personally by the 8⅛ District of the New Orleans Police Department, through the City of New Orleans Municipal Court. From the record before us it appears that these misdemeanor charges are still pending.
 

 [4]
 

 .
 
 The reason for our quote of the full prayer of the plaintiffs/appellants will be addressed
 
 infra.
 

 [5]
 

 . We note the variation between the prayer in the petition which only asked that enforcement be restrained for sections 6-31 through 6-41 and the restraining order that issued that restrained enforcement of sections 6-31 through 6-45.
 

 [6]
 

 . Decisions of administrative bodies like the VCC and AAB are reviewable by a constitutionally created court. In the case of the VCC, such decisions are reviewed by die district court.
 
 See
 
 La. R.S. 49:964.
 

 [7]
 

 . The City's current legislation relative to the VCC can be found at NEW ORLEANS, LA. CIVIL CODE Part I, ch. 7, §§ 5-701 to 5-703 and Part 2, art. I, §§ 166-1 to 166-52.
 

 [8]
 

 . Article VI, § 17 provides, in pertinent part: "Existing constitutional authority for historic preservation commissions is retained.” Significantly, the Constitutional Convention of 1973 specifically considered and rejected an amendment that would have deleted the VCC’s constitutional authority and relegated section 22(A)'s provisions to statutory authority like all other state historic preservation commissions. XIX VERATIM TRANSCRIPTS, Const. Conv. of 1973, at 56-61 (Oct. 2, 1973).
 

 [9]
 

 . In essence, 1974 La. Const. art. VI, § 4 limits a preexisting home rule charter’s grant of the power of initiation of legislation only by providing that the local government may not exercise that power inconsistently with the 1974 Constitution.
 
 City of New Orleans v. Bd. of Comm'rs of Orleans Levee Dist,
 
 supra at p. 9, 640 So.2d at 244.
 

 [10]
 

 . Article V, Chapter 7 of the Home Rule Charter pertains to (lie VCC, which provides as follows:
 

 Section 5-701. Composition
 

 There shall be a Vieux Carre Commission consisting of nine electors, domiciled in the City, appointed by the Mayor with the approval of the Council, for a term of four years, as provided by Article 14, Section 22 A of the Louisiana Constitution of 1921, and retained by Article 6, Section 17 of the Louisiana Constitution of 1974. At least one Mayoral at-large appointment shall be domiciled within the area bounded by the Mississippi River, the downtown side of Iberville Street, the river side of North Rampart Street and the uptown side of Esplanade Avenue. In selecting persons for appointment to at-large positions on the Vieux Carre Commission, the Mayor shall take such steps as are necessary to ensure that persons from all areas of the City are given due consideration for such appointments.
 

 Section 5-702. Functions.
 

 The Commission shall:
 

 (1) Preserve those buildings in the Vieux Carre section of the City as defined by the Constitution, having an historical or architectural value.
 

 (2) Make such recommendations to the Council as it deems appropriate concerning measures for the preservation of the Vieux Carre.
 

 Section 5-703. Enforcement.
 

 The Council shall by ordinance or otherwise carry into effect provisions of the Constitution and this chapter relating to the Vieux Carre section and shall provide for the enforcement of such provisions by appropriate legal proceedings including resort to injunctive process.
 

 [11]
 

 . At the time La. R.S. 13:2575 was originally enacted in 1987, the authority conferred therein upon qualifying local governing authorities was limited to prescribing “civil fines for violation of public health, housing, and environmental ordinances in the municipality” pursuant to the administrative adjudication procedures set forth in the statute. In 1992, La. R.S. 13:2575 was amended to include authority to provide administrative adjudication of "public health, housing, fire code, environmental, and historic violations.” The City, however, did not correspondingly amend the Code to expand the authority it granted to hearing officers to include fire code and historic violations.
 

 [12]
 

 . Our view of La. R.S. 25:746 is that only a person seeking to
 
 preserve
 
 a historic structure would be entitled to a temporary restraining order or preliminary injunction without the necessity of posting of a bond. A person, such as a plaintiff in this suit, would still be required to post bond under La. C.C.P. art. 3601,
 
 et seq.,
 
 because he is
 
 not
 
 seeking to preserve the historic structure.
 
 See
 
 La. R.S. 25:746 D(5) and E(l) and (5).