STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

23-522


IN RE:  MARSHALL LEGACY FOUNDATION



**********


APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NUMBER 2015-3683
HONORABLE KENDRICK J. GUIDRY, DISTRICT JUDGE

**********

SHARON DARVILLE WILSON
JUDGE

**********

Court composed of Elizabeth A. Pickett, Candyce G. Perret, and Sharon Darville
Wilson, Judges.



AFFIRMED.

**Jeffery W. Chambers (*pro hac vice*)**
**CHAMBERS LAW GROUP**
**711 Louisiana Street, Suite 2150**
**Houston, Texas  77002**
**(713) 438-5244**
**COUNSEL FOR APPELLANT:**
    **Preston L. Marshall**

**James M. Garner**
**Joshua S. Force**
**Ashley G. Coker**
**SHER GARNER CAHILL RICHTER**
**KLEIN & HILBERT, L.L.C.**
**909 Poydras Street, 27th Floor, Suite 2700**
**New Orleans, Louisiana  70112**
**(504) 299-2100**
**COUNSEL FOR APPELLANT:**
    **Preston L. Marshall**

**John P. Lahad (*pro hac vice*)**
**SUSMAN GODFREY L.L.P.**
**1000 Louisiana Street, Suite 5100**
**Houston, Texas  77002**
**(713) 653-7859**
**COUNSEL FOR APPELLANT:**
    **Preston L. Marshall**

**Matthew E. Lundy**
**Rudie R. Soileau, Jr.**
**T. Houston Middleton**
**Daniel A. Kramer**
**LUNDY LAW, L.L.P.**
**501 Broad Street**
**Lake Charles, Louisiana  70601**
**(337) 439-0707**
**COUNSEL FOR APPELLANT:**
    **Preston L. Marshall**

**Ezra Pettis, Jr.**
**PETTIS LAW FIRM, L.L.C.**
**626 Broad Street**
**Lake Charles, Louisiana  70601**
**(337) 439-3939**
**COUNSEL FOR APPELLANT:**
    **Preston L. Marshall**

**Michael Reese Davis**
**Tim P. Hartdegen**
**HYMEL DAVIS & PETERSEN, L.L.C.**
**10602 Coursey Boulevard**
**Baton Rouge, Louisiana  70816**
**(225) 298-8118**
**COUNSEL FOR APPELLEE:**
> **Elaine T. Marshall as Co-Trustee**
> **of the Marshall Legacy Foundation**

**Joel G. Davis**
**Post Office Box 625**
**Oakdale, Louisiana  71463**
**(318) 335-8750**
**COUNSEL FOR APPELLEE:**
> **Elaine T. Marshall as Co-Trustee**
> **of the Marshall Legacy Foundation**

**Walter M. Sanchez**
**SANCHEZ BURKE, L.L.C.**
**1200 Ryan Street**
**Lake Charles, Louisiana  70601**
**(337) 433-4405**
**COUNSEL FOR APPELLEE:**
> **Elaine T. Marshall as Co-Trustee**
> **of the Marshall Legacy Foundation**

**Todd S. Clemons**
**Janet D. Madison**
**TODD CLEMONS & ASSOCIATES, APLC**
**1740 Ryan Street**
**Lake Charles, Louisiana  70601**
**(337) 477-0000**
**COUNSEL FOR APPELLEE:**
> **Dr. Stephen D. Cook as Co-Trustee**
> **of the Marshall Legacy Foundation**

**Philip K. Jones, Jr.**
**Kelly T. Scalise**
**LISKOW & LEWIS, APLC**
**701 Poydras Street, Suite 5000**
**New Orleans, Louisiana  70139**
**(504) 581-7979**
**COUNSEL FOR APPELLEE:**
> **Dr. Stephen D. Cook as Co-Trustee**
> **of the Marshall Legacy Foundation**

**WILSON, Judge.**

This is a dispute over the control of the Marshall Legacy Foundation (MLF). Preston Marshall (Preston) appeals the final judgment, which finds that his removal as trustee of MLF was justified and that Dr. Stephen D. Cook (Dr. Cook) is a valid trustee of MLF. The judgment also denies all of the relief sought in Preston's "Ex Parte Petition for Instructions Regarding the Marshall Legacy Foundation" and the amendments thereto. For the following reasons, we affirm the trial court's judgment in its entirety.

I.

## ISSUES

Preston asserts the following eight assignments of error.

1. The trial court erred in striking Preston's request for a jury trial.

2. The trial court erred in denying Preston's request for leave to file a supplemental and amended petition for damages, particularly after Elaine T. Marshall (Mrs. Marshall) and Dr. Cook were permitted to file updated pleadings seven years into the litigation.

3. The trial court erred in finding that it could not determine intent, despite admission into the record of the unambiguous trust instrument that clearly reflected J. Howard Marshall's (J. Howard) intent concerning the Marshall Museum of Racing (MMR) trust.

4. The trial court erred in finding that the MMR trust instrument's anti-amendment provision is ambiguous.

5. The trial court erred in disregarding and attempting to distinguish *Albritton v. Albritton*, 600 So.2d 1328 (La.1992), and its holding that the strong public policy in favor of trust indestructibility forbids attempts to amend a trust, particularly when the MMR trust instrument precludes such amendments.

6. The trial court erred in upholding "self-help" amendments to the MLF trust instrument that violated the strong public policy in favor of trust indestructibility.

7. The trial court erred in finding that Preston was estopped from challenging prohibited amendments to the MLF trust instrument that violated the rule of trust indestructibility.

8. The trial court erred in refusing to remove Dr. Cook as a trustee.

## II.

## FACTS AND PROCEDURAL HISTORY

This matter has been before this court on numerous occasions.[1] E. Pierce Marshall, Sr. (Pierce Sr.), as agent for his father, J. Howard, formed MMR in 1995. Pierce Sr. was the sole trustee of MMR from its inception until the trust instrument was amended in 1997 to change MMR's name to the Marshall Museum and Library (MML) and to name Dr. Cook as the sole trustee. Dr. Cook testified that Pierce Sr. stepped down as trustee because he did not want MML to become embroiled in the litigation concerning J. Howard's succession and that Pierce Sr. hoped to avoid that by appointing Dr. Cook as trustee.

Dr. Cook continued as sole trustee until Pierce Sr. died in 2006. In 2007, Dr. Cook appointed Mrs. Marshall, and her two sons, E. Pierce Marshall, Jr. (Pierce Jr.) and Preston, as his co-trustees. The four co-trustees changed MML's name to the Marshall Heritage Foundation (MHF) on June 4, 2007. The Peroxisome Trust is a Louisiana irrevocable charitable trust set up by Mrs. Marshall in 2011, with $100 million of her own funds for the specific purpose of funding MHF. Preston and Pierce Jr. are named co-trustees and co-remainder beneficiaries of that trust.

MLF was created on December 23, 2013, when the Fourteenth Judicial District Court granted Mrs. Marshall's request[2] to divide MHF into two new

---

[1] This court has recognized that "[t]his litigation is complex, multi-faceted, and of a very long duration." *In re Marshall Legacy Found.*, 19-450, p. 5 (La.App. 3 Cir. 7/31/19), 279 So.3d 401, 404. In its written reasons for judgment in this case, the trial court noted that the original filing of the ex parte petition in this matter "spawned years of litigation that included additional pleadings, answers, exceptions, reconventional demands, declaratory action, motions, recusals, motions to disqualify, motions for summary judgments, discovery disputes, voluminous hearings, and an extensive writ practice, all leading up to trial."

[2] In the memorandum in support of the petition to divide MHF into two new foundations, it was asserted that Mrs. Marshall, Dr. Cook, Pierce Jr., and Preston "unanimously agree that the efficient administration of the Trusts and the Foundation would be best served if [] Pierce [] Jr.

2

foundations: The Marshall Heritage Foundation (MHF-New) and MLF. MHF-New was to be governed by co-trustees, Mrs. Marshall, Dr. Cook, and Pierce Jr., while MLF was to be governed by co-trustees, Mrs. Marshall, Dr. Cook, and Preston.

Preston now argues that MHF was simply divided into two trusts.

> The distinction is important because if there is nothing "created," "the existing articles of the foundation would carry over to the new foundations." The existing articles contained an "anti-amendment provision" which prohibited the amendment of the provisions contained in articles V, IX, and X. Article V contained a provision that limited Dr. Cook's tenure as a trustee to a single year. The new articles, which were not executed by the co-trustees until February, 2014, completely rewrote Article V and deleted the provision limiting Dr. Cook's tenure.

*In re Marshall Legacy Found.*, 16-527, pp. 1–2 (La.App. 3 Cir. 2/15/17), 212 So.3d 656, 659, *writ denied*, 17-479 (La. 5/12/17), 219 So.3d 1104. The third paragraph of the "Petition to Re-Situs Trust, Divide Trusts, and Divide Foundation" specifically states that Mrs. Marshall, Dr. Cook, Pierce Jr., and Preston "hereby seek authority to pay over all of the assets and beneficiary interest of [MHF] into two new foundations."

The sole purpose of MLF is to give money to charities and tax-exempt organizations. MLF's funds were placed in a bank account at Frost Bank and a brokerage account at Frost Brokerage in Houston, Texas. Two signatures were required for transactions. MarOpCo, Inc. (MarOpCo) is a Marshall family company that provides legal, accounting, and administrative services to Mrs. Marshall and entities owned or controlled by her. Mrs. Marshall is the chief executive officer of MarOpCo, and Preston was employed by MarOpCo. MarOpCo issued checks and handled administrative tasks for MLF. Preston was fired from his position at MarOpCo on June 11, 2015.

---

and Preston . . . were able to administer their respective beneficial and charitable interests . . . independently from one another[]" based on the siblings having "differing passions, charitable aspirations, and views of the most prudent management of the funds in the . . . [MHF]."

Shortly before the instant litigation was filed, Preston refused to sign three checks for grants that were sent to him by his mother, through the certified public accountant, Sheena Bonadona (who was also the chief financial officer of MarOpCo), on July 22, 2015. On August 31, 2015, Preston instructed Frost Bank to place a debit hold on all activity for MLF, and Frost Bank placed a hold on approximately $12,849,00.00.[3] In response, Mrs. Marshall and Dr. Cook then opened a new MLF account at Northern Trust in Dallas, Texas. Mrs. Marshall wrote a letter to Preston to inform him that she and Dr. Cook were revoking any outstanding delegations of authority to him. When Preston refused to take action necessary to effectuate Dr. Cook's becoming an authorized signor on MLF's accounts, Mrs. Marshall and Dr. Cook passed a resolution that removed Preston as co-trustee. The resolution was passed on or about September 14 and 15, 2015.

Preston filed this ex parte suit on September 14, 2015. Preston sought instructions from the trial court permitting him to direct Frost Bank and Frost Brokerage to pay $2,384,500.00 to Baylor University, his alma mater, and $1,000,000.00 to the Kincaid School,[4] which was the payee of one of the checks that he had refused to sign a few months earlier. Judge Ronald F. Ware (Judge Ware) signed an ex parte order on September 14, 2015, authorizing Preston to execute any document necessary to pay those two checks. Those checks were not immediately delivered.

The next day, Preston filed a "First Supplemental Petition for Instructions Regarding the Marshall Legacy Foundation and for Injunctive Relief." On

---

[3] The freezing of these funds lasted for nearly three years and resulted in other litigation being filed in Texas.

[4] Preston's children attended the Kinkaid School.

September 15, 2015, Preston was granted a temporary restraining order (TRO) enjoining Mrs. Marshall and Dr. Cook from delegating the administration of MLF to MarOpCo and from amending the prior years' tax returns.

On September 18, 2015, Preston filed a "Second Supplemental and Amended Ex Parte Petition for Instructions Regarding the Marshall Legacy Foundation." Mrs. Marshall filed dilatory exceptions of nonconformity with La.Code Civ.P. art. 235.2, vagueness, nonconformity with La.Code Civ.P. art. 891, unauthorized use of summary proceedings, improper cumulation of actions, and improper joinder of parties as well as peremptory exceptions of no right of action and no cause of action. Mrs. Marshall also filed a motion to strike and a motion to transfer. Dr. Cook adopted these pleadings as his own.

On October 2, 2015, Preston filed a motion for a TRO and a preliminary injunction and a "Third Amended Petition for Instructions Regarding the Marshall Legacy Foundation and for Injunctive Relief." Elaine re-urged her exceptions. After the trial court heard and denied Mrs. Marshall's exceptions and Preston's motion for a TRO,[5] several writ applications were filed in this court, ultimately resulting in this court ordering the trial court to hear and decide Preston's motion to disqualify attorneys and motion to subpoena lawyers prior to hearing and deciding the exceptions to the petitions. *See In Re: Marshall Legacy Found.*, 15-1077 (La.App. 3 Cir. 11/25/15) (unpublished writ decision), and *In Re: Marshall Legacy Found.*, 15-1195 (La.App. 3 Cir. 1/25/16) (unpublished writ decision), *writs denied*, 16-221, 16-240 (La. 02/12/16), 186 So.3d 1171.

---

[5] The trial court denied Preston's request for injunctive relief and stated that it was "not going to remove [Dr. Cook] by way of the preliminary injunction or the temporary restraining order."

On May 22, 2018, Mrs. Marshall and Dr. Cook filed an answer and reconventional demand to uphold their removal of Preston as valid, or alternatively, to have Preston removed by the court. They asked for a ruling that MLF was a newly created foundation where majority controlled. They also sought an injunction enjoining Preston from interfering with the majority decisions of MLF's co-trustees. When Preston answered this reconventional demand, he made his first request for a jury trial. Mrs. Marshall and Dr. Cook opposed the request for a jury trial, and the request was denied following a hearing on July 8, 2022. Preston sought writs from this court, and his writ application was denied. *In re Marshall Legacy Found.*, 22-550 (La.App. 3 Cir. 12/19/22) (unpublished writ decision). Preston did not seek writs from the Louisiana Supreme Court on this issue.

In *Cook v. Marshall*, 17-5368, (E.D. La. Feb. 25, 2019) (unreported decision), *aff'd*, 842 F.Appx. 858 (5th Cir. 2020), the court granted a motion for summary judgment filed by Dr. Cook as the trustee of MHF-New. The court found that no amendment was necessary and declared that as co-trustee of the Peroxisome Trust, Preston is obligated to assure the distribution of funds owed to MHF-New as a beneficiary of the Peroxisome Trust and that his continued refusal to authorize such distributions is a breach of trust and a breach of his fiduciary duties.[6] Based on this ruling, Mrs. Marshall and Dr. Cook filed exceptions of res judicata in the case *sub judice*. The trial court held a hearing on April 2, 2019, and denied the exception.

After the hearing on the exception of res judicata, Mrs. Marshall filed a motion to recuse Judge Ware, and he referred the motion for random allotment to another judge. In response to Mrs. Marshall's writ application to this court, we remanded

---

[6] Dr. Cook alleged that Preston's refusal to authorize distributions from the Peroxisome Trust caused over $30 million to be held and not distributed such that Peroxisome Trust owed over $9 million in taxes, penalties, and interest. *Cook v. Marshall*, 17-5368 (E.D. La. April 5, 2021) (unreported decision).

6

the matter to the trial court with instructions for it to immediately request that the Louisiana Supreme Court appoint a judge ad hoc to hear the pending motions to recuse. *In re Marshall Legacy Found.*, 19-450 (La.App. 3 Cir. 7/31/19), 279 So.3d 401. This matter was ultimately assigned to Judge Kendrick J. Guidry.

On February 1, 2022, Mrs. Marshall and Dr. Cook filed a motion for partial summary judgment, seeking a ruling that MLF was created as a new trust, that Dr. Cook is a valid co-trustee thereof, and that Preston was validly removed as a co-trustee in September of 2015. The trial court declined to decide this motion and referred the matter to the trial on the merits.

On June 7, 2022, over six months before the deadline to amend the pleadings, Mrs. Marshall and Dr. Cook filed a motion for leave to file a supplemental reconventional demand. The proposed supplement added facts regarding litigation in federal court and in the Nineteenth Judicial District Court and removed the request for indemnity against Preston personally. It did not add any new cause of action. The trial court denied the motion for leave, and Mrs. Marshall and Dr. Cook sought writs from this court. This court granted the writ, reversed and set aside the trial court's ruling, and entered judgment allowing the amended pleading. *In re Marshall Legacy Found.*, 22-615 (La.App. 3 Cir. 12/19/22) (unpublished writ decision). Preston did not seek writs from the Louisiana Supreme Court. Instead, on December 27, 2022, he filed his own motion for leave to file an amended pleading, which was entitled "Restated Petition for Instructions Regarding the Marshall Legacy Foundation and for Declaratory Relief, Demand for Reimbursement of Funds and Demand for Jury." Mrs. Marshall and Dr. Cook objected to the motion for leave, asserting that it was "a retaliatory tactic at the eleventh hour, adding Mrs. Marshall and Dr. Cook as defendants in their personal capacities," which added new

allegations and new causes of action as well as new damage claims. The trial court denied his motion for leave, and this court affirmed that ruling. *In re Marshall Legacy Found.*, 23-86 (La.App. 3 Cir. 3/17/23) (unpublished writ decision). The Louisiana Supreme Court denied Preston's writ application. *In re Marshall Legacy Found.*, 23-402 (La. 3/19/23), 358 So.3d 43.

A bench trial in this matter began on March 20, 2023. At the close of the trial on March 23, 2023, the trial court took the matter under advisement. The trial court ruled in favor of Mrs. Marshall and Dr. Cook and issued written reasons for ruling on April 13, 2023. On May 8, 2023, the trial court signed a judgment in accordance with its written reasons and ruled as follows: (1) Dr. Cook is a valid trustee of MLF and has not breached any fiduciary duty and has not been involved in any self-dealing; (2) Mrs. Marshall and Dr. Cook, as the legal co-trustees of MLF, were justified and acted within their authority when they removed Preston from his position as co-trustee of MLF because of Preston's misconduct and breaches of fiduciary duties; (3) any and all other claims set forth by Preston were denied; and (4) any relief not expressly granted was denied. This appeal followed.

On appeal, Preston seeks the reversal of the trial court's rulings and a declaration that any retrial of this matter be through a jury trial. Preston attempts to frame the issue as whether the trial court erred in upholding significant amendments to the MMR trust provisions that were non-amendable. Preston argues that based on the clear wording of the original trust instrument and the strong public policy of trust indestructibility, the purported amendments to the MMR trust were not effective. However, as did the trial court, we find that MLF, not MMR, is the trust at issue. For the reasons that follow, we affirm the trial court's May 8, 2023 judgment in its entirety.

8

## III.

## LAW AND DISCUSSION

*Request for Jury Trial*

Louisiana Code of Civil Procedure Article 1731 provides that "[e]xcept as limited by Article 1732, the right to jury trial is recognized" and that "[e]xcept as otherwise provided, the nature and amount of the principal demand shall determine whether any issue in the principal or incidental demand is triable by jury." Louisiana Code of Civil Procedure Article 1732 provides the situations in which a jury trial shall not be available, and these include suits "where the amount of no individual petitioner's cause of action exceeds fifty thousand dollars[7] exclusive of interest and costs" and a summary or injunction proceeding. Since the right to a jury trial in civil cases is provided by statute, whether a party is entitled to a trial by jury is a question of law, which is reviewed de novo. *Coastal Cargo Co. L.L.C. v. Bd. of Comm'rs of Port of New Orleans*, 24-26 (La.App. 4 Cir. 2/8/24), ____ So.3d ____.

Preston attempts to frame the issue several different ways. He argues that the trial court erred in striking his timely request for a jury trial because MLF is valued at approximately $22,699,758.00 and because actions under the Trust Code, even those seeking declaratory judgments, are not excluded by Article 1732. While Preston is correct that actions for declaratory judgment are not specifically precluded from trial by jury, the cause of action must still meet the monetary threshold for a jury trial. La.Code Civ.P. arts. 1732 and 1879. For this reason, Preston also states the issue as "[w]hether a claim for attorneys' fees should be included in the threshold calculation for a jury trial when the indemnity claim is an integral part of a dispute

---

[7] The threshold for a jury trial at the time this suit was filed was fifty thousand dollars exclusive of interest and costs. Effective January 1, 2021, the amount was lowered to ten thousand dollars exclusive of interest and costs.

9

between trustees[.]" In support of this argument, Preston cites *Cambridge Corner Corp. v. Menard*, 525 So.2d 527 (La.1988), and *Guidry v. Millers Cas. Ins. Co.*, 01-1 (La.App. 1 Cir. 6/21/02), 822 So.2d 675. These cases state that La.Code Civ.P. art. 1732(1) specifically excludes only interest and costs from the calculation of the amount of a petitioner's cause of action such that attorney's fees and penalties must be included.

Mrs. Marshall and Dr. Cook point out that Preston made two separate demands for a trial by jury. The first was denied by judgment dated July 13, 2022, and this court upheld that ruling. *In re Marshall Legacy Found.*, 22-550.[8] The second demand for jury trial was contained in an amended pleading that was not filed because the trial court denied Preston's motion for leave to file it. Both this court and the Louisiana Supreme Court upheld the trial court's ruling in that respect. *In re Marshall Legacy Found.*, 23-86,[9] *writ denied*, 23-402 (La. 3/19/23), 358 So.3d 43.

Based on these writ denials, Mrs. Marshall and Dr. Cook argue that the law of the case doctrine applies to Preston's assignment of error with regard to his demand for trial by jury. They also argue that Preston's argument is moot since it points only to the July 13, 2022 judgment and fails to assign as error the March 13, 2023 judgment striking his renewed demand for trial by jury, which was contained in his proposed amended petition. We note, however, that Preston does raise as error the denial of his petition for leave to file the amended petition. Mrs. Marshall and

---

[8] The ruling reads: "**WRIT DENIED.** We find no error in the trial court's ruling." *In re Marshall Legacy Found.*, 22-550.

[9] The ruling reads: "**STAY DENIED. WRIT DENIED.** We find no abuse of discretion in the trial court's ruling. *In re Marshall Legacy Found.*, 23-86.

Dr. Cook cite *Spartan Directional, L.L.C. v. Energy Serv. S., L.L.C.*, 22-445, pp. 4–5 (La.App. 3 Cir. 5/17/23), 366 So.3d 763, 766:

> "A very marked distinction can be drawn between cases in which writs are simply denied and those in which writs are denied on a finding that the trial court did not err." *Waller v. State, Dep't of Health & Hosps.*, 11-643, p. 4 (La.App. 3 Cir. 11/9/11), 79 So.3d 1085, 1089, *writ denied*, 11-2692 (La. 2/10/12), 80 So.3d 488. "A considered writ denial constitutes law of the case." *Id.*

They also cite *State in Interest of R.R.B.*, 22-397, p. 13 (La.App. 3 Cir. 10/26/22), 353 So.3d 883, 892 (citations omitted), *writ denied*, 22-1725 (La. 3/28/23), 358 So.3d 496, for the following principle:

> These same arguments, however, were presented in the writ application and assessed by the earlier panel rendering the writ ruling. We do not revisit the issue here and note that an appellate court has the discretion to not reconsider a previously decided issue unless it finds the previous decision was based on palpable error or that manifest injustice would occur.

We note that the law of the case principle is a "discretionary guide" that concerns, among other things, "the rule that an appellate court ordinarily will not reconsider its own rulings of law on a subsequent appeal in the same case." *La. Land & Expl. Co. v. Verdin*, 95-2579, pp. 3–4 (La.App. 1 Cir. 9/27/96), 681 So.2d 63, 65, *writ denied*, 96-2629 (La. 12/13/96), 692 So.2d 1067, *cert. denied*, 520 U.S. 1212, 117 S.Ct. 1696 (1997). In *Spartan Directional*, 366 So.3d at 766–67, this court noted that, in this situation, the court should review the "matter to determine if palpable error resulting in manifest injustice would occur if the law of the case doctrine is applied."

The trial court viewed this litigation as a summary proceeding for injunctive relief in the form of a TRO and preliminary injunction.[10] Pursuant to La.Code Civ.P.

---

[10] Louisiana Code of Civil Procedure Article 2592 provides a list of the matters which may be tried by summary proceedings and includes a category for "[a]ll other matters in which the law permits summary proceedings to be used." "The Code of Civil Procedure contemplates the use of summary proceedings for the issuance of a preliminary injunction. *See also* La.C.C.P. arts. 3601-

art. 1732(4), a jury trial shall not be available in a summary or injunction proceeding. All of Preston's amended petitions are titled as petitions for instructions and for injunctive relief. The value of the trust itself is irrelevant to Preston's demand for a jury trial because it does not make his cause of action for declaratory judgment have a monetary value itself. Furthermore, Preston's reliance on *Cambridge Corner*, 525 So.2d 527, and *Guidry*, 822 So.2d 675, is misplaced. Preston's claim for attorney's fees is found in his first and third supplemental petitions for instructions where he prays for a judgment declaring that "[t]he co-trustees must reimburse PRESTON L. MARSHALL for the costs of these proceedings from the funds of the MARSHALL LEGACY FOUNDATION, including reasonable attorney fees[.]" In *Benoit v. Allstate Ins. Co.*, 00-424, pp. 6–7 (La. 11/28/00), 773 So.2d 702, 706, the Louisiana Supreme Court focused on the "purpose of the use of the phrase 'cause of action[]'" in La.Code Civ.P. art. 1732 and concluded that "the term 'cause of action' focuses on the conduct of the particular defendant in the occurrence or transaction that gives rise to the plaintiff's demand."

Other courts have noted that:

> A party should not be able to manipulate another's right to jury trial by requesting reasonable attorney's fees which may not even be recoverable under the facts proven at trial. We find no reason to make a trial court's determination of whether a trial by jury is appropriate contingent upon a request for reasonable attorney's fees, which cannot be adequately calculated until after trial is held.

*Bellina v. Graybar*, 511 So.2d 1326, 1328 (La.App. 4 Cir. 1987). Preston's claim for attorney's fees is an indemnity claim for reimbursement from the trust itself

---

3602 and 2592(1); *Norton v. Lay*, 360 So.2d 239, 241 (La.App. 1 Cir. 1978)." *Singleton v. East Baton Rouge Par. Sch. Bd.*, 22-667, p. 9 (La.App. 1 Cir. 9/16/22), 353 So.3d 164, 173. However, "[a] claim for declaratory relief is not a summary proceeding; it requires a trial on the merits where each party has an opportunity to present evidence in a form other than verified pleadings and affidavits." *Apasra Prop., L.L.C. v. City of New Orleans*, 09-709, p. 18 (La.App. 4 Cir. 2/11/10), 31 So.3d 615, 626–27.

pursuant to La.R.S. 9:2191. It is not a cause of action for damages against Mrs. Marshall and Dr. Cook, and it is not the same as in *Cambridge Corner* where the attorney's fees were an element of damages since they were provided for by the lease at issue in that case. Preston's cause of action is for removal of Dr. Cook as a trustee, and any award of attorney's fees would be incidental to Preston's success on the cause of action.

For these reasons, we find no palpable error in the trial court's denial of Preston's request for a jury trial. This assignment of error has no merit.

*Leave to File Supplemental and Amended Petition*

Preston argues that the trial court erred in denying his request for leave to file a supplemental and amended petition for damages, particularly after Mrs. Marshall and Dr. Cook were allowed to file a supplemental reconventional demand so close to trial on the merits. This court affirmed the trial court's ruling, and the Louisiana Supreme Court denied Preston's writ application. *In re Marshall Legacy Found.*, 23-86, and *In re Marshall Legacy Found.*, 358 So.3d 43. Based on these writ denials, Mrs. Marshall and Dr. Cook argue that the law of the case doctrine applies to Preston's assignment of error with regard to his amended pleading. As stated above, we will review the matter to determine if there is palpable error. *Spartan Directional*, 366 So.3d 763.

On appeal, Preston alleges that he was acting in good faith, in response to Mrs. Marshall and Dr. Cook being allowed to amend their reconventional demand. Preston also alleges that his proposed amended petition was not filed as a delay tactic, would not have unduly prejudiced either Mrs. Marshall or Dr. Cook, and that it would not delay the trial. Preston asserts that since he had not amended his petition

13

since the initial stages of the litigation in 2015, he was simply attempting to bring his claims current into 2022.

> Louisiana courts have formulated criteria that they should consider when ruling on motions requesting leave of court and time to amend pleadings. Amendment of pleading should be liberally allowed, provided that movant is acting in good faith, amendment is not sought as delaying tactic, opponent will not be unduly prejudiced, and trial of issues will not be unduly delayed.

*Farmers-Merchants Bank & Trust Co. v. St. Katherine Ins.*, 93-552, p. 3 (La.App. 3 Cir. 3/9/94), 640 So.2d 353, 355–56 (citations omitted), *writ denied*, 94-841 (La. 5/13/94), 641 So.2d 204. "It is within the trial court's discretion whether to allow an amendment to the petition after an answer is filed. That ruling is not to be disturbed on appeal unless there has been an abuse of discretion." *Noel v. Noel*, 15-37, p. 17 (La.App. 3 Cir. 5/27/15), 165 So.3d 401, 414, *writ denied*, 15-1121 (La. 9/18/15), 178 So.3d 147.

In denying leave, the trial court stated:

> I do not believe this amended pleading is in good faith for this reason. I find that there are several new causes of action. We've got a Grandchildren's Trust that's now an issue in this new pleading. We got [sic] jury trial that's being reurged, different ways, different kinds. The Court has already ruled on that. . . . This new petition attempts another bite at that apple[,] and we bit at that apple several times with regard to a jury trial request. . . . I also find a delay tactic in that. We're adding new parties, which I know by adding Mrs. Marshall and Dr. Cook as individual capacities [sic] will change the whole scope and landscape of this case with regard to discovery, with regard to pleadings and exceptions and hearings. I think there's an undue delay[,] and [it] will unduly delay the trial. Regardless of the court calendar, it will be another undue delay because we'll have to do another scheduling order with regard to a new trial date, get it on the calendar, new round of additional discovery because now we're going after these folks individually. I think that's another reason why I find it as a delay tactic and, quite frankly, unrelated to the issues that's [sic] already been presented so far, and it just changes the whole landscape of the case. I think it will unduly prejudice Mrs. Marshall and Dr. Cook because it changes their defense strategies now because they're being added as parties as individuals, different than the trustees of Marshall Legacy Foundation.

14

The trial court rejected Preston's tit-for-tat argument that he should be allowed to amend his pleadings simply because this court allowed Mrs. Marshall and Dr. Cook to amend their reconventional demand. Unlike the amended reconventional demand, which added no new causes of action, Preston's amended pleading contained fifty-seven new paragraphs and added four new causes of action, including claims for monetary recovery from Mrs. Marshall and Dr. Cook in their individual capacities. Preston claims that he is not adding these claims to revive his demand for a jury trial. Although Preston argues that the trial would not be unduly delayed, Mrs. Marshall and Dr. Cook argue that adding them as defendants in their individual capacities would require further discovery, expert analysis, and the filing of motions and exceptions. Mrs. Marshall and Dr. Cook point out that Preston did not file his motion for leave until the last day for the filing of amending pleadings under the scheduling order (and only three months before the scheduled trial date), despite the fact that the "new" causes of action concern matters that Preston has known about for years.

This court finds no abuse of discretion in the trial court's denial of the motion for leave to amend and finds no palpable error to warrant our revisiting this issue. This assignment of error has no merit.

### *Amendments to the Trust Documents and Dr. Cook's Status as Co-Trustee*

Preston's assignments of error number three, four, five, seven, and eight all deal with the alleged amendments to the MMR's trust instrument. Preston argues that he is entitled to a de novo review of these issues on appeal since the trial court was making a legal interpretation of the trust instrument based on its finding that no testimony of the settlor's intent was offered. Mrs. Marshall and Dr. Cook assert that these assignments of error are reviewed under the manifest error standard of review since they concern issues of fact or mixed questions of law and fact. *See Rosell v.*

15

*ESCO*, 549 So.2d 840 (La.1989). We note, however, that while mixed questions of law and fact are "generally subject to the manifest error standard of review, where[] . . . there is no dispute as to the dispositive facts, the issue can be decided as a matter of law[,] and the review is *de novo*." *Frank v. Par. of Pointe Coupee ex rel. Torres*, 10-299 (La.App. 1 Cir. 9/10/10) (unreported decision), *writ denied*, 10-2291, p. 1 (La. 12/10/10), 51 So.3d 728. Therefore, we will address the standard of review with regard to each issue when necessary.

The MMR trust documents contained two provisions that Preston alleges to be critical to the resolution of the issues presented in these assignments of error:

ARTICLE V
AMENDMENT

This agreement may be amended from time to time by the trustee, whenever the trustee believe[s] it is necessary or advisable to enable them to carry out the purpose of the Foundation more effectively. Every amendment shall be in writing and shall be signed by the trustee. No such amendment shall, however, vary the provisions of Article VIII, except where required to preserve the Foundation's tax-exempt status.

. . . .

ARTICLE VIII
MANAGEMENT

E. Pierce Marshall shall serve as the initial trustee. E. Pierce Marshall shall have sole authority to make all decisions regarding the management of the trust during his tenure as trustee. Should E. Pierce Marshall cease to serve for any reason, Elaine T. Marshall, Preston Marshall, and E. Pierce Marshall, Jr. shall succeed and serve as successor co-trustees. Following E. Pierce Marshall's service as a trustee, the co-trustees shall govern the Foundation on the basis of majority rule. The trustees may establish one or more bank accounts for the Foundation. Notwithstanding any other provisions of these articles, the Foundation shall carry on only those activities permitted by an organization exempt from Federal income tax under §501(c)(3) of the Internal Revenue Code of 1986 or the corresponding provision of any future United States statute.

Preston argues that the trial court erred in disregarding the law and interpreting the trust to find that it allowed amendments in direct contravention to the clear

16

prohibitions in the MMR trust instrument. Specifically, Preston asserts that J. Howard explicitly articulated his intent to have only his family members serve as trustees, that the MMR trust instrument provided no means for those named as trustees to designate their own successor, and that Dr. Cook, therefore, could not be a valid trustee absent court appointment. Preston argues that to ignore or modify the trust's plain language violates Louisiana trust law, and he urges this court to find that any amendment to the provisions designating the trustee of the trust are void *ab initio*. He cites *Albritton*, 600 So.2d at 1331–32, in support of his argument:

> We believe there is a strong public policy in effectuating and protecting the settlor's intent as set forth in the trust document. In *Richards v. Richards,* 408 So.2d 1209 (La.1981), we stated:
>
>> In construing a trust, the settlor's intention controls and is to be ascertained and given effect, unless opposed to law or public policy.
>
> The trial judge mistakenly focused on *plaintiff's* intent in entering into the agreement, rather than on the *settlor's* intent. In doing so, he implicitly held that in the absence of any vices of consent, plaintiff could enter into an agreement affecting the trust, even if the agreement was contrary to the settlor's intent. This cannot be so. The trust would hardly be a stable device for the transmission of property if the beneficiaries and trustees could make agreements that could modify the settlor's fundamental intent in setting up the trust. We believe such modifications are contrary to the rules expressed in the trust code in La.R.S. 9:2021 and 9:2025:
>
>> **§ 2021. General rule; modification**
>>
>> The settlor may modify the terms of the trust after its creation *only to the extent he expressly reserves the right to do so.* (emphasis added).
>>
>> **§ 2025. Delegation of right to terminate or to modify administrative provisions**
>>
>> A settlor may delegate to another person the right to terminate a trust, or to modify the administrative provisions of a trust, *but the right to modify other provisions of a trust may not be delegated.* (emphasis added).

17

Thus, under the scheme of the trust code, even the settlor has no power to modify the trust he has created unless he expressly reserves the power to do so. More importantly for our purposes, the trust code *prohibits* the delegation of the power to modify provisions of the trust other than the administrative provisions. Oppenheim & Ingram, 11 *Louisiana Civil Law Treatise—Trusts* § 294 (1977). Likewise, La.R.S. 9:2028 sets forth a concept of trust indestructibility:

> The consent of all settlors, trustees and beneficiaries shall not be effective to terminate the trust or any disposition in trust, unless the trust instrument provides otherwise.

We have held this concept of trust indestructibility is "inherent in our Louisiana trust law." *Richards,* 408 So.2d at 1210. Taken as a whole, we believe these rules set forth a public policy of protecting the trust instrument from any modification or termination contrary to the settlor's clearly expressed intent. These are imperative rules of public order, and any violation of these rules is an absolute nullity. *See Badon's Employment, Inc. v. Smith,* 359 So.2d 1284 (La.1978); *E.L. Burns Co. v. Cashio,* 302 So.2d 297 (La.1974).

The trial court found that *Albritton*, 600 So.2d 1328, is factually distinguishable from the case at bar. We agree. The trust in *Albritton* was an irrevocable testamentary spendthrift trust that was set to terminate in two stages, with one half to terminate on the plaintiff's twenty-first birthday and the remaining half to terminate on the plaintiff's twenty-sixth birthday. This is quite different from a trust like MLF whose sole purpose is to donate money to charity. Even so, the court in *Albritton* noted that "we do not mean to foreclose a former beneficiary from setting up a new trust with a former trust's assets *after* the former trust has terminated by its own provisions. At this point, the intent of the settlor of the former trust becomes irrelevant . . . ." *Id*. at n. 6. In *Albritton*, the court found that the settlor's intent was set forth in the trust document. In that case it was the settlor's intent with respect to the termination of the trust that was at issue, and that was easily determined by the provisions for termination found in the trust instrument. Here, it is the settlor's intent as to who could serve as trustees and whether the trust instrument could be amended. Preston focuses on J. Howard's intent and attempts

18

to ignore both Pierce Sr.'s intent and the MLF trust instrument.  Furthermore, the amendment in *Albritton* fundamentally modified the dispositive trust provisions.  Dr. Cook's status as co-trustee did not fundamentally alter any trust provisions.

Preston asserts that the trial court erred in finding that the doctrines of equitable estoppel and judicial estoppel prevent him from challenging the allegedly prohibited amendments and from removing Dr. Cook as a valid trustee because to do so violates the rule of trust indestructibility.

> Equitable estoppel may be defined as the effect of the voluntary conduct of a party whereby he is precluded from asserting rights against another who has justifiably relied upon such conduct and changed his position so that he will suffer injury if the former is allowed to repudiate the conduct.  Founded upon good faith, the doctrine is designed to prevent injustice by barring a party, under special circumstances, from taking a position contrary to his prior acts, admissions, representations, or silence.

*Am. Bank & Trust Co. v. Trinity Universal Ins. Co.*, 251 La. 445, 459, 205 So.2d 35, 40 (La.1967) (citations omitted).  Three elements are required to apply the doctrine of equitable estoppel:  "(1) A representation by conduct or work; (2) Justifiable reliance thereon; and (3) A change of position to one's detriment because of the reliance."  *Miller Plastering, Inc. v. Amigo Bldg. Corp.*, 09-237, p. 6 (La.App. 3 Cir. 10/7/09), 20 So.3d 1190, 1194.

Judicial estoppel is generally described "as an equitable doctrine designed to protect the integrity of the judicial process by prohibiting parties from deliberately changing positions according to the exigencies of the moment."  *Miller v. Conagra, Inc.*, 08-21, p. 9 (La. 9/8/08), 991 So.2d 445, 452.

> In deciding whether the doctrine of judicial estoppel applies, we must consider whether:  "(1) the party against whom judicial estoppel is sought has asserted a legal position that is plainly inconsistent with a prior position; (2) a court accepted the prior position; and (3) the party did not act inadvertently."  *Hawkins v. Meridian Res. & Expl. LLC*, 16-1545, p. 11 (La.App. 1 Cir. 12/6/17), 236 So.3d 610, 618, *writ denied*, 18-027 (La. 4/16/18), 240 So.3d 920.

*Gonsoulin v. Broussard*, 22-202, pp. 6–7 (La. App. 3 Cir. 12/14/22), 353 So.3d 1044, 1047. However, the Louisiana Supreme Court has also recognized that "it is also observed that the 'circumstances under which judicial estoppel may appropriately be invoked are not reducible to any general formulation of principle' and '[a]dditional considerations may inform the doctrine's application in specific factual contexts.'" *Miller*, 991 So.2d at 452, *quoting New Hampshire v. Maine*, 532 U.S. 742, 750–51, 121 S.Ct. 1808, 1815. We conduct a de novo review with regard to whether estoppel applies in this case. *Gonsoulin*, 353 So.3d 1044.

Mrs. Marshall and Dr. Cook assert that these assignments of error depend on the notion that the MMR's trust instrument applies and trumps MLF's trust instrument and that, because MLF was validly created as a new trust with a new trust instrument, these assignments of error lack merit. Mrs. Marshall and Dr. Cook call attention to the following resolutions adopted on September 17, 2013, at a meeting of the MHF trustees, and signed by Preston on December 23, 2013:

> **BE IT RESOLVED**, that the Foundation be decanted into two new foundations, and that Edwin K. Hunter [Hunter] petition the 14th Judicial District Court for Calcasieu Parish, Louisiana, for approval of the decanting.
>
> . . . .
>
> **BE IT RESOLVED**, that the Foundation's existing articles (with the exception of initial trustees) carry over to the new foundations and specifically, the existing successor trustee plan developed by Elaine T. Marshall shall remain in force.
>
> . . . .
>
> **BE IT RESOLVED**, that Elaine T. Marshall, Dr. Stephen D. Cook, and Preston L. Marshall shall serve as Trustees of the Marshall Legacy Foundation, with Elaine T. Marshall serving as Chairman of the Board of Trustees and President.

20

So, while the resolution states that MHF's existing articles carry over, it specifically states that the article concerning initial trustees does not carry over.

MLF's corresponding article concerning initial trustees states, in part, as follows:

**ARTICLE V**
**TRUSTEES**

Dr. Stephen D. Cook, Elaine T. Marshall, and Preston L. Marshall shall serve as the initial Co-Trustees of the Foundation. Should Elaine T. Marshall and Preston L. Marshall perish in a common casualty or all cease to serve for any reason whatsoever, Charles de Ganahl Koch and David Hamilton Koch shall succeed them as additional Co-Trustees.

MLF's corresponding article concerning amendments reads:

**ARTICLE VI**
**AMENDMENT**

These Articles may be amended from time to time by the Co-Trustees, whenever the Co-Trustees believe it is necessary or advisable to enable the Co-Trustees to carry out the purpose of the Foundation more effectively. Every amendment shall be in writing and shall be signed by the Co-Trustees. No such amendment shall, however, vary the provisions of Article V, IX, and X except where required to preserve the tax-exempt status of the Foundation.

The September 14, 2015 amendment to the MLF trust instrument added the following articles:

**"ARTICLE XII**
**INELIGIBILITY TO SERVE AS TRUSTEE**

Ineligibility. A Trustee shall be deemed ineligible to serve upon his or her: i) consistent untruthfulness or dishonesty; ii) opposition to implementing Trustee decisions[;] or iii) breach of his or her fiduciary duties on one or more instances.

The Trustees shall rule on the ineligibility of a Trustee in their untrammeled discretion. The determination of ineligibility shall be made by majority vote of the Trustees. Upon determination of ineligibility, the Trustee shall be removed immediately."

**"ARTICLE XIII**
**FOUNDATION PRESIDENT**

21

The President shall be the sole officer of the Foundation. The President shall be elected by majority vote of the Trustees. The President shall preside at any meeting of the Trustees he or she may call. The President shall sign Foundation checks as directed by the Trustees, shall communicate Trustee decisions to potential grantees, shall sign all contracts, pledges and similar documents and shall sign all tax returns and other compliance documents."

Mrs. Marshall and Dr. Cook also point out that Preston's original ex parte petition alleges that MHF was divided into two new foundations and that the court order signed on December 23, 2013, states that MHF "is divided equally into two new foundations upon execution of same by a majority of the Trustees." MHF-New and MLF applied for and were each granted new Employer Identification Numbers from the Internal Revenue Service (IRS). Preston himself completed form 1023 to obtain 501(c)(3) tax-exempt status for MLF separate from the 501(c)(3) status of MHF. Preston's third amended petition was the first time that he made the argument that the articles of MMR carried over to MLF. But this contention was disproven at trial.

Bradley Trevino (Trevino), the attorney who prepared the documents for the formation of MLF, as well as the pleadings associated with the decanting of MHF, testified that Preston reviewed all of the documents and that Preston himself was adamant that there be two new foundations that were separate in identity from MHF.

The transcript of a recording of a meeting held on February 5, 2014, was introduced into evidence. Preston and his attorney, Ren Houren, met with Hunter and Trevino. In that meeting, Preston told Hunter and Trevino that:

I was agreed to it [sic], with the understanding, and it was in the documents, that it says "two new trusts." It does not say "the creation of Legacy from Heritage." It doesn't say that.

It specifically says "two new trusts[]" and that each will receive half of the assets and half of the liabilities[,] and that's what we agreed to.

And so, I didn't . . . agree to say that Pierce can have Heritage[,] and I'll resign as trustee of Heritage. That wasn't the agreement.

Then, at trial, Preston testified as follows on cross-examination:

Q: And you wanted the old one to terminate because you didn't want your brother and the new foundation to have anything to do with the legacy, if you will, of J. Howard Marshall, correct?

A: Well, certainly that was his private foundation[,] and we weren't agreeing to give one group his private foundation.

Q: And you wanted that one to terminate and two new ones to be created by the division, correct?

A: Or whatever the correct legal characterization is.

Preston further testified that "two new trusts were created is my understanding and that the old - - the original trust evaporates, disappears, terminates. I don't know what the correct term is for it, but the two new ones are the survivors."

Mrs. Marshall and Dr. Cook also emphasize that Preston knowingly and willingly agreed that Dr. Cook would be a co-trustee of MLF because he signed the trust instruments, which created MLF and indicated that Dr. Cook would be a co-trustee. The petition to divide stated that Dr. Cook would be a co-trustee of MLF. The trial court emphasized that "there was never an objection or lawsuit from Preston as to Dr. Cook's status as a trustee during the formation of MLF." In fact, over a time span of nearly eighteen years, Preston never objected to Dr. Cook serving as a trustee. Preston even accepted his own appointment as co-trustee of MML by Dr. Cook without any objection to Dr. Cook's authority to do so.

The trial court based its application of judicial and equitable estoppel on several factual findings. First, Preston concurred with Dr. Cook's status as trustee for eighteen years and now changes his position. The trial court also noted that Preston "artfully suggests he is only trying to undo the appointment of Dr. Cook

without attempting to recall any decisions Dr. Cook participated in along the way" and that these arguments are internally inconsistent in this litigation. On October 19, 2011, Preston, along with Mrs. Marshall, Dr. Cook, and Pierce Jr., signed amendments to MHF, which stated that all four were currently serving as co-trustees. The purpose of the amendment was to provide for the appointment of successor trustees to serve with Dr. Cook should the Marshall's "perish in a common casualty or all cease to serve for any reason whatsoever." The evidence and testimony showed that grants and donations were memorialized by unanimous resolutions signed by all four of the co-trustees of MHF and by all three of the co-trustees of MLF until July of 2015 when Preston refused to sign certain MLF checks to pay previously approved grants.

Second, Preston's deliberate change in position has caused multi-state and multi-jurisdictional litigation against which Dr. Cook must defend himself after having relied upon his approved position as trustee to conduct business and transactions for several Marshall family trusts. Those decisions have impacted third parties.

The trial court found "the creation of MLF to be legal and valid. MLF was created as a new charitable foundation[.]" That creation was approved by the court in 2013. Based on the record, it is clear that MLF was validly created as a new trust with a new trust instrument that provided for Dr. Cook's appointment as co-trustee. For these reasons, we affirm the trial court's ruling that Dr. Cook is a valid trustee of MLF and find no error in its ruling that Preston is estopped from claiming otherwise. Preston's assignments of error number three, four, five, seven, and eight lack merit.

*Validity of the Removal of Preston as Co-Trustee*

24

In his sixth assignment of error, Preston contends that the trial court erred when it upheld "self-help" amendments to the trust that violated strong public policy in favor of trust indestructibility. He points out that Mrs. Marshall and Dr. Cook did not mention preserving the tax-exempt status of MLF as a reason for the purported amendment to the trust instrument that was made in order to remove him as Trustee.[11] Thus, Preston argues that Mrs. Marshall and Dr. Cook did not meet their burden of proving that his actions in 2015 threatened MLF's tax-exempt status to justify removing him as trustee.

The trial court found that Mrs. Marshall and Dr. Cook "were within their discretion and properly removed Preston" based on its finding that they proved the following facts at trial:

1. Preston misrepresent[ed] the facts to the Court when he filed the Ex-Parte Petition for [I]nstructions, including, but not limited to, that a pledge agreement existed with Baylor when in fact it did not exist and withholding that Preston had in his power to sign the Kincaid check since he once possessed it;

2. Preston refus[ed] to sign the checks presented to him, and then misrepresent[ed] those facts and sequence to the Court;

3. Preston ask[ed] [Mrs. Marshall] to sign a blank check;

4. Preston expos[ed] MLF to civil liability by not timely paying pledged funds;

5. Preston [held] checks or otherwise [did] not rapidly pay[] obligations immediately once checks were received despite pleading the urgency of same;

6. Plac[ed] a debit hold, "freezing"[] the MLF funds at Frost Bank depriving MLF of its ability to function and carry out its mission, with funds being frozen for two years until that litigation in Texas was concluded;

7. Refus[ed] to allow and actively obstruct[ed] MLF main operation transfer to Dallas, including banking component;

---

[11] That amendment is prefaced with a statement that Mrs. Marshall and Dr. Cook "deem it necessary and advisable to amend the Foundation's articles to enable them to carry out the stated purpose of the Foundation more effectively."

8. Fil[ed] suit in the Northern Trust litigation obstructing management of MLF bank accounts in Dallas;

9. [Took] contradictory positions in multiple lawsuits, including arguing in Federal Court that MLF was a new foundation not associated with MHF old for funding purposes, that MHF old does not exist, yet in the instant lawsuit suggesting MLF is a carry-over of MHF old and not a new creation;

10. Breach[ed] his fiduciary duties as an MLF trustee by obstructing source funding to it from the Peroxisome [T]rust and EPM Testamentary Lead Trust as their trustee; and

11. Continu[ed] to fight in multiple lawsuits against the best interest of MLF.

Preston argues that eight of those reasons had not yet occurred when Mrs. Marshall and Dr. Cook decided to amend the trust provisions to remove him as trustee in September of 2015. Mrs. Marshall and Dr. Cook assert that Preston threatened the continued tax-exempt status of MLF by refusing to sign checks to charities, unilaterally freezing millions of dollars of MLF's funds, cutting off millions of dollars in MLF funding, and filing unnecessary lawsuits based on false statements. These are reasons that occurred before or contemporaneously with the amendment removing Preston as trustee.

Preston's expert in tax-exempt organizations, Laura W. Plunkett, testified that Preston's actions did not put MLF's tax-exempt status at risk. The trial court did not find her to be a credible witness and found that "she never convinced the court that decisions or amendments had to be made with a stated purpose of preserving tax-exempt status." However, the trial court did note that Mrs. Marshall and Dr. Cook's actions in keeping the trust active were, in fact, actions taken to preserve MLF's tax-exempt status.

Professor Phillip T. Hackney was accepted as expert in federal tax law and testified on behalf of Mrs. Marshall and Dr. Cook. Professor Hackney has an LLM

in tax law and worked in the office of the Chief Counsel of the IRS in Washington, DC, in the Tax-Exempt Government Entities Group. He testified that Preston's actions in placing the hold on MLF's funds at Frost Bank "absolutely threated the tax-exempt purpose[]" because this constituted a substantial non-exempt purpose and was, in his opinion, a self-dealing act under the Internal Revenue Code. Mrs. Marshall testified that while the funds were frozen, she had to send letters to charities to whom MLF had promised donations to inform them that MLF would be sending a lesser amount because it did not have the funds to pay the entire amount.

Having reviewed the extensive record in this matter, we find no error in the trial court's finding that Mrs. Marshall and Dr. Cook properly removed Preston as co-trustee.

## V.

## CONCLUSION

For the reasons assigned above, the judgment of the trial court is affirmed in its entirety. All costs of these proceedings are assessed to Preston L. Marshall.

**AFFIRMED.**